1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

THE ESTATE OF MICHAEL
WILSON by and through its
successor-in-interest PHYLLIS
JACKSON, and PHYLLIS
JACKSON,

Plaintiffs,

v.

COUNTY OF SAN DIEGO, *et al.*,

Defendants.

Case No. 20-cv-457-BAS-DEB

**ORDER GRANTING IN PART
AND DENYING IN PART
MOTION TO DISMISS**

**[ECF No. 12]**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On February 14, 2019, Michael Wilson died from heart failure. ("Compl.,"
ECF No. 1.)  For an unspecified time prior to his death, Wilson was incarcerated at
San Diego Central Jail.  He collapsed in his cell, was transported to UCSD Medical
Center, and passed away.  (*Id.*)  Plaintiffs—Wilson's estate and his mother Phyllis
Jackson—bring suit against the County of San Diego, William Gore, Alfred Joshua,
Barbara Lee, and various Doe Defendants (jail staff).  Plaintiffs dismissed Joshua
from the suit, and the County, Gore, and Lee now move to dismiss the complaint.
("Mot.," ECF No. 12.)  Plaintiffs filed an opposition to the Motion ("Opp'n, ECF
No. 13) to which Defendants replied ("Reply," ECF No. 15).  The Court finds
resolution of this matter is suitable without the need for oral argument.  *See* Civ. L.R.

7.1(d)(1).  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I.      FACTUAL ALLEGATIONS

At the time of his death, Wilson was 32 years old and had hypertrophic cardiomyopathy, a condition that "can cause shortness of breath, chest pain, fainting, heart palpitations, heart murmurs, an irregular and rapid heart rate known as atrial fibrillation, mitral valve problems that caused blood to flow backward into his heart, heart failure, and sudden cardiac death."  (Compl. ¶¶ 19, 21.)  Hypertrophic cardiomyopathy can be treated with medication and/or a pacemaker.  (*Id.* ¶ 22.) Wilson had a pacemaker and was taking medications.  (*Id.* ¶ 23.)  The intake staff at the jail knew Wilson suffered from hypertrophic cardiomyopathy, and "[p]er the Court's order" Wilson was to be monitored in the medical unit of the jail.  (*Id.* ¶¶ 26, 28.)[1]  While in jail, Wilson started to have difficulty breathing, which his mother, Jackson, noticed during a phone call with him.  (*Id.* ¶¶ 25, 29.)  Jackson notified an official at the jail of Wilson's breathing difficulty, and other members of Wilson's family also called the medical unit of the jail to alert them of Wilson's "worsening condition" and that he needed to be taken to the hospital to avoid sudden cardiac death.  (*Id.* ¶¶ 29, 31.)  Plaintiffs allege these calls were "ignored" and no one called for medical staff or placed Wilson in the medical unit.  (*Id.* ¶¶ 30, 33.)  On February 14, 2019, Wilson collapsed, and the jail staff began resuscitation efforts and transported him to the hospital, where resuscitation efforts continued, but Wilson died.  (*Id.* ¶ 34.)  Per the medical examiner, Wilson died from "sudden cardiac death due to acute congestive heart failure that was caused by his hypertrophic cardiomyopathy."  (*Id.* ¶ 35.)

Plaintiffs allege the jail staff gave Wilson no medication for his condition and instead gave him cough syrup.  (*Id.* ¶¶ 39, 40.)  Plaintiffs allege a "systematic failure

---

[1] It is unclear what "Court order" the Complaint refers to.

1   to adhere to the written policies and procedures with respect to providing adequate
2   health care to inmates in the San Diego County jails" and a systematic failure "to
3   investigate incidents of medical neglect, staff misconduct, and deaths in the Jail."
4   (*Id.* ¶¶ 43, 44.)  Plaintiffs allege a long-standing "custom and practice of improper
5   and inadequate investigations; cover-up of misconduct; and failure to discipline and
6   train deputies and medical staff." (*Id.* ¶ 46.)  In support of these assertions, Plaintiffs
7   list previous deaths and injuries that occurred in the San Diego County jails that they
8   claim to be a result of neglect and misconduct.  (*Id.* ¶¶ 48–87.)  Plaintiffs bring five
9   causes of action under 42 U.S.C. § 1983 (deliberate indifference to serious medical
10   needs, right of association, failure to properly train, failure to properly supervise and
11   discipline, and under *Monell*), as well as claims for wrongful death, negligence,
12   violation of the Americans with Disabilities Act ("ADA") and violation of the
13   Rehabilitation Act.  Defendants the County, Gore, and Lee move to dismiss the third
14   through ninth causes of action.

15   **II.    LEGAL STANDARD**

16   A complaint must plead sufficient factual allegations to "state a claim to relief
17   that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal
18   quotation marks and citations omitted).  "A claim has facial plausibility when the
19   plaintiff pleads factual content that allows the court to draw the reasonable inference
20   that the defendant is liable for the misconduct alleged." *Id.*

21   A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil
22   Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R.
23   Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  The court
24   must accept all factual allegations pleaded in the complaint as true and must construe
25   them and draw all reasonable inferences from them in favor of the nonmoving party.
26   *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  To avoid a Rule
27   12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather,
28   it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell*

1    *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A Rule 12(b)(6) dismissal may

2    be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient

3    facts alleged under a cognizable legal theory.'"  *Johnson v. Riverside Healthcare*

4    *Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police*

5    *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

6    **III.   ANALYSIS**

7        **A.   <u>Failure to Train and Failure to Properly Supervise and Discipline</u>**

8            **<u>(Third and Fourth Causes of Action)</u>**

9        Gore is the Sheriff of the County of San Diego and Lee is the Medical

10   Administrator for the Sheriff's Department.  (Compl. ¶¶ 10–12.)  Plaintiffs allege

11   Gore is responsible for supervising the Sheriff's Department employees and Lee is

12   responsible for supervising the medical and nursing staff.  (*Id.*)

13       "A defendant may be held liable as a supervisor under § 1983 'if there exists

14   either (1) his or her personal involvement in the constitutional deprivation, or (2) a

15   sufficient causal connection between the supervisor's wrongful conduct and the

16   constitutional violation.'"  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)

17   (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  This causal connection

18   can be established "by setting in motion a series of acts by others which the actor

19   knows or reasonably should know would cause others to inflict the constitutional

20   injury."  *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007) (quoting *Johnson v.*

21   *Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)).  A supervisor may be held liable if he

22   implements a "policy so deficient that the policy itself is a repudiation of

23   constitutional rights and is the moving force of the constitutional violation."  *Hansen*,

24   885 F.2d at 646 (citation omitted).  A supervisor may also be liable under section

25   1983 for failing to train subordinates when the failure amounts to deliberate

26   indifference.  *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) (citing *City of*

27   *Canton v. Harris*, 489 U.S. 378, 388 (1989)).

28       Plaintiffs do not allege Defendants Gore and Lee were personally involved in

the violations against Wilson; rather, Plaintiffs proceed under the latter form of supervisorial liability. Defendants first move to dismiss the claims because Plaintiffs do not name "any specific policy or event created at the hands of Sheriff Gore and Ms. Lee by which Mr. Wilson was denied complete access to his health medication." (Mot. at 5.)

Plaintiffs liken this case to *Starr v. Baca.* There, the Ninth Circuit found that the plaintiff had stated a claim upon which relief could be granted for deliberate indifference when the plaintiff alleged a supervisor's 1) knowledge of the unconstitutional conditions; 2) knowledge of the culpable actions of his subordinates, and 3) the supervisor's inaction—which taken in totality amounted to acquiescence in the unconstitutional conduct of his subordinates. 652 F.3d at 1208. In analyzing the sufficiency of the plaintiff's pleading, the court held: "It is somewhat tedious to recount the many allegations in the complaint detailing what [the defendant] knew or should have known, and what [the defendant] did or failed to do" because the detailed, factual list of prior examples in support of the claim was so lengthy. *Id.* at 1209. The plaintiff alleged seventeen prior incidents and reports that put the defendant on notice of injuries substantially similar to the plaintiff's, and the plaintiff alleged the action or inactions of the defendant in response to each incident. *Id.* at 1209–12.

The Court agrees Plaintiffs have done something similar here. Plaintiffs provided a list of inmates who died or became ill while in a County jail, which Plaintiffs deem to be "examples of failure to coordinate and share critical medical information among personnel" and they allege the examples demonstrate "the customs and/or policies of the Sheriff's Department which sent the message to staff that negligence, dishonesty, and improprieties will be tolerated by the Department, even when a death results." (Compl. ¶¶ 56–57.) Plaintiffs also point to a report prepared by the National Commission on Correctional Health Care ("NCCHC") on its Standards for Health Services in Jails; the report detailed the essential standards

the Central Jail failed to meet.  (*Id.* ¶ 62.)  Some of these standards concerned medication for inmates and the jail's polices regarding the ordering and dispensing of medicine.  (*See, e.g.*, ¶¶ 68, 71.)  With this, Plaintiffs have adequately pled that the alleged conduct that occurred in Wilson's case is part of a pattern or practice of denying certain inmates medical care or failing to document the need for medical care, which may lead to harm or death.

Further, Plaintiffs have pled knowledge.  The NCCHC audit was requested by the San Diego Sheriff's Department; it is therefore plausible that Gore, the County Sheriff, and Lee, the Medical Administrator for the Sheriff's Department, became privy to the report regarding the jail's issues.  (*See* Compl. ¶¶ 10, 61.)  It is not the case that "only official and external reports can provide notice to supervisory officials to support a constitutional violation." *Greer v. County of San Diego*, No. 3:19-CV-0378-GPC-AGS, 2019 WL 5453955, at *6 (S.D. Cal. Oct. 24, 2019) (finding a grand jury report and letter by the Citizen Law Enforcement Review Board "provided notice and plausibly support the conclusion that the Supervising Defendants knew or should have known" of the violations).  Plaintiffs have further pled that Gore and Lee took no steps to improve the situation, despite knowledge of the previous instances of alleged medical neglect.  (Compl. ¶ 118.)

Thus, Plaintiffs have pled there is "culpable action, or inaction, [that] is directly attributable to" the supervisors.  *Starr*, 652 F.3d at 1205 (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991)); *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1461 (9th Cir. 1988), *cert. granted, judgment vacated*, 490 U.S. 1087 (1989), *and opinion reinstated,* 886 F.2d 235 (9th Cir. 1989) ("[A]cts of omission, as well as commission, may constitute the predicate for a finding of liability under section 1983.").  Plaintiffs have also pled that Gore and Lee's inaction caused Wilson's injuries.  *See Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).  They pled that due to the repeated failures by jail staff to properly care for inmates needing medical care, Gore and Lee were aware of the problem and

did nothing, and this failure led to the denial of adequate medical care to Wilson. These allegations plausibly show a causal connection between this inaction and Wilson's injuries.  *See Hamby v. Scribner*, No. CVF046468OWWDLBP, 2006 WL 241491, at *4 (E.D. Cal. Feb. 1, 2006), *report and recommendation adopted in part*, No. 1:04CV6468 OWW DLB P, 2006 WL 680462 (E.D. Cal. Mar. 15, 2006) ("[A] plaintiff may show a prima facie case of supervisory liability by alleging that the supervisory defendants . . . knew of the violations and failed to act to prevent them").

The same is true for the failure to train cause of action; the above alleged deficiencies were known to Lee and Gore and they failed to remedy the constitutional violations by providing adequate training, which plausibly led to Wilson's injuries. (Compl. ¶ 110); *see Flores v. County of Los* Angeles, 758 F.3d 1154, 1158–59 (9th Cir. 2014) (holding to plead a claim of failure to train against an official, the plaintiff must show that the official "was deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights").  The third and fourth causes of action are adequately pled.

Defendants next argue these claims should be dismissed because the Complaint specifically alleges that Wilson's damages are not attributable to any poor policy or failures to train, instead that they were caused by a disregard of the jail's protocol and training.  (*See* Compl. ¶ 63 ("Defendant Does' decision to deviate from the County of San Diego's own protocol as to the medical care of inmates was a substantial factor in causing [Wilson's] death.")).  Plaintiffs may plead allegations of poor policy and failure to follow policy in the alternative.  *See* Fed. R. Civ. P. 8(d)(2). They have done so here, and this is not a reason for dismissal.

Defendants next move to dismiss the claims because the claims relate to medical decision-making.  Defendants cite a few out-of-circuit cases for the premise that a supervisor who lacks medical expertise cannot be liable for a medical decision. (Mot. at 7.)  These cases, while not binding and partly contrary to Ninth Circuit precedent, are not helpful to Defendants.  Plaintiffs are not seeking to "substitute

1    [the] judgment of Gore and Lee in place of the medical staff," nor are they arguing

2    that Gore and Lee are "liable for the medical staff's diagnostic decisions." (*See id.*

3    (quoting cases).)  Instead, as noted above, a supervisor can be liable for his or her

4    inaction.  *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) ("A

5    supervisor can be liable in his individual capacity for his own culpable action or

6    inaction in the training, supervision, or control of his subordinates; for his

7    acquiescence in the constitutional deprivation; or for conduct that showed a reckless

8    or callous indifference to the rights of others.").  This is not the same as a finding

9    that Gore and Lee may not defer to another's medical opinion or that they are

10   vicariously liable for the staff's decisions.

11          Defendants finally argue qualified immunity.  (Mot. at 8.)  "The doctrine of

12   qualified immunity protects government officials 'from liability for civil damages

13   insofar as their conduct does not violate clearly established statutory or constitutional

14   rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555

15   U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

16   Qualified immunity shields an officer from liability even if his or her action resulted

17   from "'a mistake of law, a mistake of fact, or a mistake based on mixed questions of

18   law and fact.'"  *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)).

19   "Determining whether officials are owed qualified immunity involves two inquiries:

20   (1) whether, taken in the light most favorable to the party asserting the injury, the

21   facts alleged show the official's conduct violated a constitutional right; and (2) if so,

22   whether the right was clearly established in light of the specific context of the case."

23   *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S.

24   194, 201 (2001)).

25          Defendants argue both inquiries are not met.  The Court disagrees.  First,

26   viewing the allegations in a light most favorable to Wilson, Plaintiffs have adequately

27   pled that Wilson's constitutional right to adequate medical care was violated because

28   he was not given any medical treatment despite warnings from his family members

– 8 –

that he needed it. *See Estelle v. Gamble*, 429 U.S. 97, 102–05 (1976) (prisoners have a constitutional right to receive medical care in prison and the government deprives an incarcerated individual of due process rights if government officials are deliberately indifferent to the individual's serious medical needs); *see also Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) ("The general law regarding the medical treatment of prisoners [is] clearly established . . . ."). Second, it is clearly established that "officers [can] not intentionally deny or delay access to medical care." *Id*. (citing *Estelle*, at 104– 105.) It is also clearly established that Gore and Lee can face supervisorial liability for such unreasonable medical care. The Ninth Circuit in *Starr* held that in certain situations, a supervisor can be liable if an inmate is given unconstitutional medical care by the supervisor's subordinates. 652 F.3d 1202. Thus, at this early stage, Plaintiffs have sufficiently established a constitutional violation and clearly established law; Defendants are not entitled to qualified immunity.

For the above reasons, the Court **DENIES** the Motion to Dismiss the third and fourth causes of action.

### B.    *Monell* Claim (Fifth Cause of Action)

A municipal entity is liable under section 1983 only if the plaintiff alleges his constitutional injury was caused by employees acting pursuant to the municipality's policy or custom. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008). The County may not be held vicariously liable under section 1983 simply based on allegedly unconstitutional acts of its employees. *Jackson v. Barnes*, 749 F.3d 755, 762 (9th Cir. 2014). Instead, the municipality may be held liable "when execution of a government's policy or custom . . . inflicts the injury." *Monell*, 436 U.S. at 694. A plaintiff must show "(1) he possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy is the

"moving force behind the constitutional violation." *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006).

Here, Plaintiffs point to many alleged systemic deficiencies and policies by the County. They allege the County had a policy or practice of denying treatment to inmates in serious medical distress and not placing them in the medical ward, of disbelieving complaints of inmates needing medical attention, of not properly screening inmates for medical care, of failing to communicate the medical needs of inmates between the medical staff and deputies, and more. (Compl. ¶¶ 143–150.) Plaintiffs allege the County was aware of the mortality rate of inmates due to the denial of medical care; had received complaints by inmates, family members and staff regarding injuries caused by medical neglect; and knew of deaths of inmates due to the "failures to communicate critical medical information to coordinate care for inmate-patients with serious medical and psychiatric needs." (*Id.* ¶ 154.)

Plaintiffs have pled a pattern of constitutional violations against inmates that allegedly resulted from the County's custom or practice of failing to provide adequate medical care. *See Greer*, 2019 WL 5453955, at *10 ("To trigger municipal liability under *Monell* and [*Bd. of Cty. Com'rs of Bryan Cty., Okl v. Brown*, 520 U.S. 397 (1997)] in the absence of an official policy, Plaintiff must demonstrate a known pattern of similar constitutional violations that resulted from a challenged custom or pervasive practice."). The Complaint is supported by specific examples of death and injury of inmates due to the denial of needed medical care. Thus, Plaintiffs have adequately pled a policy of inaction or of failure to provide adequate medical care. Plaintiffs have adequately pled a *Monell* claim and the Court **DENIES** the Motion to Dismiss this claim.

## C. Wrongful Death (Sixth Cause of Action)

This cause of action is brought by both Plaintiffs, and Defendants point out that wrongful death can only be brought by a decedent's heirs, not its estate. (Mot. at 12.) "[A] wrongful death claim . . . must be brought by the decedent's dependents,

and is limited to 'claims for personal injuries they have suffered as a result of a wrongful death.'" *Estate of Lopez v. Gelhaus*, 149 F. Supp. 3d 1154, (N.D. Cal. 2016) (quoting *Davis v. Bender Shipbuilding & Repair Co.*, 27 F. 3d 426, 429 (9th Cir. 1994)).  The Court therefore dismisses the claim as brought by the estate; the claim is now only brought by Plaintiff Jackson.

Defendants next move to dismiss this cause of action as barred.  California Government Code section 844.6, which is part of the California Tort Claims Act, provides that, with certain enumerated exceptions, "a public entity is not liable for . . . an injury to any prisoner."  Cal. Gov't Code § 844.6(a)(2).  One of the exceptions is California Government Code § 845.6, which provides in relevant part that "a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."  Cal. Gov't Code § 845.6.  California courts have construed the provision to create limited liability only "when: (1) the public employee knows or has reason to know [of the] need, (2) of immediate medical care, and (3) fails to take reasonable action to summon such medical care."  *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013).

Following the language of this statute, Defendants argue that even if the Doe Defendants (the jail staff) knew of Wilson's need for medical care but did not summon that care, Gore and Lee did not know of the need.  (Mot. at 13.)  But, "[p]rison officials may also be liable for their employees' failure to summon medical care under California Government Code § 845.6 for negligent supervision and training as to when to summon medical care."  *Villarreal v. County of Monterey*, 254 F. Supp. 3d 1168, 1187 (N.D. Cal. 2017); *Resendiz v. County of Monterey*, No. 14-cv-5495-LHK, 2015 WL 3988495, at *8 (N.D. Cal. June 30, 2015) ("[T]he Court concludes that Plaintiffs may state claims for negligent supervision and wrongful death pursuant to Cal. Gov't Code § 845.6.").  The County may also be liable.  *Estate*

1  *of Claypole v. County of San Mateo*, No. 14-CV-02730-BLF, 2014 WL 5100696, at

2  \*8 (N.D. Cal. Oct. 9, 2014) ("Plaintiff's claims are viable to the extent they are based

3  upon the County's negligence in supervising and training its employees regarding

4  the furnishing of mental health care.").

5      Plaintiffs allege that the Doe Defendants were aware of Wilson's need for

6  medical care due to the phone calls by Wilson's family members, but they did not

7  summon medical care for Wilson.  Thus, there are sufficient facts to infer that Doe

8  Defendants failed to take reasonable action to summon the necessary medical care

9  for Wilson.  *See Estate of Victorianne v. County of San Diego*, No. 14-cv-2170 WQH

10  (BLM), 2016 WL 411292, at \*14 (S.D. Cal. Feb. 3, 2016) (holding the exception to

11  immunity applied because employees knew or had reason to know that plaintiff was

12  in need of immediate medical care).  As noted above, Plaintiffs also plead a plausible

13  claim for insufficient supervision and training against Gore, Lee, and the County

14  regarding the jail staff's furnishing of medical care, thus, these Defendants may also

15  be liable for wrongful death under Government Code § 845.6.  The wrongful death

16  claim is not barred, and the Court **DENIES** the Motion to Dismiss the claim.

17      **D.    Negligence (Seventh Cause of Action)**

18      Plaintiffs bring a negligence claim against all Defendants.

19          **1.    The County**

20      The County moves to dismiss the negligence cause of action under the

21  California Tort Claims Act, claiming Plaintiffs do not identify a statutory or

22  constitutional basis under which they may proceed against the County.  (Mot. at 14.)

23      The California Tort Claims Act provides: "Except as otherwise provided by

24  statute: (a) A public entity is not liable for an injury, whether such injury arises out

25  of an act or omission of the public entity or a public employee or any other person."

26  Cal. Gov't Code § 815(a).  "[T]he intent of the Tort Claims Act is to confine potential

27  liability, not expand it."  *Eastburn v. Reg. Fire Prot. Auth.*, 31 Cal.4th 1175, 1179

28  (2003).  Accordingly, "all governmental tort liability is dependent on the existence

– 12 –

of an authorizing statute or 'enactment.'" *Searcy v. Hemet Unified High Sch. Dist.*, 177 Cal. App. 3d 792, 802 (1986) (citing Gov. Code §§ 815(a), 815.6). "[T]o state a cause of action every fact essential to the existence of statutory liability must be pleaded with particularity, including the existence of a statutory duty." *Id.* "Since the duty of a governmental agency can only be created by statute or 'enactment,' the statute or 'enactment' claimed to establish the duty must at the very least be identified." *Id.*

Here, Plaintiffs have not identified any statute or enactment that would impose a duty upon the County, instead, they appear to sue for common law negligence. Plaintiffs do not address the negligence claim in their opposition except to argue that the County is liable "for its own negligent conduct pursuant to § 845.6, which permits claims against officials for negligent supervision and training as to when to summon medical care." (Opp'n at 25.) But Plaintiffs did not list this statute, or any statute or enactment, in their Complaint as the basis for a duty. Because "a public entity cannot be held liable for common law negligence" *McCarty v. State of Cal. Dep't of Transp.*, 164 Cal. App. 4th 955, 977 (2008), the claim must be dismissed. However, Plaintiffs "are not precluded from attempting to bring a negligence claim against a public entity pursuant to statutory authority." *Pallamary v. Elite Show Servs., Inc.*, No. 17cv2010-WQH-BGS, 2018 WL 3064933, at *11 (S.D. Cal. June 19, 2018). Accordingly, the dismissal is without prejudice.

### 2.    Gore and Lee

The elements of a cause of action for negligence are "(a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996) (citations omitted). Gore and Lee move to dismiss the negligence claim because Plaintiffs "cannot allege facts sufficient to establish a legal duty owed by Defendants Sheriff Gore and Ms. Lee to Mr. Wilson in their individual capacities." (Mot. at 15.)

1    "California law does not recognize a general duty of care on the part of
2    supervisors with respect to negligent hiring, retention, or training." *Estate of Osuna*
3    *v. County of Stanislaus*, 392 F. Supp. 3d 1162, 1182 (E.D. Cal. 2019).  "[T]he
4    potential legal responsibility of District administrators and supervisors for
5    negligently hiring or retaining . . . arises from the special relationship they had with
6    plaintiff." *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal.4th 861, 877 (2012).
7    Plaintiffs generally Defendants had a duty to Wilson "to act with ordinary care and
8    prudence" (Compl. ¶ 168) but do not point to any special relationship.
9        Other district courts have declined to find such a relationship under similar
10   circumstances.  *See Kendrick v. County of San Diego*, No. 15-cv-2615-GPC (AGS)
11   2018 WL 1316618, at *11 (S.D. Cal. Mar. 14, 2018) ("Plaintiff does not allege a
12   special relationship existed between [the decedent] and Sheriff Gore.  Therefore,
13   Sheriff Gore cannot be personally liable for a claim of negligent hiring and
14   supervision . . . ."); *Fuentes v. City of San Diego*, No. 3:16-cv-02871-BEN-JMA,
15   2017 WL 2670976, at *3 (S.D. Cal. June 20, 2017) (dismissing claim because
16   "Plaintiffs generally allege that the City and/or SDPD have a duty to protect people
17   from harm and exercise care in selection, retention, training, and supervision of their
18   employees.  However, these alleged duties do not resemble the enhanced duties
19   imposed on school personnel that formed the basis for their special relationship with
20   the minor plaintiff in *William S. Hart*."); *Willis v. County of Sacramento*, No. 2:13-
21   cv-01671-MCE-EFB, 2014 WL 1027070, at *6 (E.D. Cal. Mar. 14, 2014) (citing
22   *William S. Hart* and dismissing plaintiff's claim against the county sheriff for
23   negligent hiring, supervision, and retention "because Plaintiff did not allege that a
24   duty existed between [the sheriff] and Plaintiff"); *Lindsay v. Fryson*, No. 2:10-cv-
25   2842 LKK KJN PS, 2012 WL 2683019, at *7 (E.D. Cal. July 6, 2012) (concluding,
26   in a case alleging that County Child Protective Services negligently supervised,
27   hired, and retained its employees, that "there are no allegations suggesting that . . .
28   [the] supervisors undertook or otherwise had a special relationship with plaintiff").

– 14 –

1    As Plaintiffs here have not pointed to any special relationship between the

2    supervisor Defendants and Wilson, the same result occurs here, and the Court

3    **DISMISSES** the negligence claim against Gore and Lee, but grants leave to amend.

4    **E.      ADA and Rehabilitation Act Claims (Eighth and Ninth Causes of**

5    **Action)**

6    Plaintiffs bring a claim against the County under Title II of the ADA, which

7    states "no qualified individual with a disability shall, by reason of such disability, be

8    excluded from participation in or be denied the benefits of the services, programs, or

9    activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C.

10   § 12132.  To state a claim under Title II of the ADA, the plaintiff must allege:

11   (1) he is an individual with a disability; (2) he is otherwise qualified to
     participate in or receive the benefit of some public entity's services,
12   programs, or activities; (3) he was either excluded from participation in
13   or denied the benefits of the public entity's services, programs, or
     activities, or was otherwise discriminated against by the public entity;
14   and (4) such exclusion, denial of benefits, or discrimination was by
15   reason of [his] disability.

16   *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).  The County moves

17   to dismiss this claim because the allegations that the jail staff failed to attend to

18   Wilson's medical needs or provide medically necessary care does not show that

19   Wilson was denied benefits by reason of his disability.  (Mot. at 16.)  "The ADA

20   prohibits discrimination because of disability, not inadequate treatment for

21   disability." *Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010).

22   "Inadequate medical care does not provide a basis for an ADA claim unless medical

23   services are withheld *by reason of* a disability."  *Marlor v. Madison County*, 50 F.

24   App'x 872, 873 (9th Cir. 2002).  There is no allegation that Wilson was denied

25   anything because of a disability; in fact, Plaintiffs allege inadequate medical care was

26   widespread throughout the jail, not that any action was taken or not taken because of

27   Wilson's disability. "Plaintiffs have not pled that Decedent was treated differently

28   than other inmates who did not suffer from a disability." *Estate of Bock ex rel. Bock*

*v. County of Sutter*, No. 2:11-CV-00536-MCE, 2012 WL 423704, at *9 (E.D. Cal. Feb. 8, 2012); *see Arreola v. Cal. Dep't of Corr. & Rehab.*, No. 16-CV-03133-JD, 2017 WL 1196802, at *2 (N.D. Cal. Mar. 31, 2017) (finding that the allegation that the jail knew of a disability and failed to provide reasonable care "might point to indifference or negligence" but does not show the plaintiff was "discriminated against, or denied benefits, by reason of a disability"); *Brown v. Brown*, No. 1:14-CV-01184-LJO, 2015 WL 2374284, at *6 (E.D. Cal. May 18, 2015) (dismissing ADA claims because allegations "related solely to the medical care Plaintiff was provided, and the treatment, or lack of treatment, concerning Plaintiff's medical conditions does not provide a basis upon which to impose liability under the ADA").

Some courts hold that "[t]he ADA may be violated where there is an 'outright denial of medical services' because the complete lack of access to services may be 'so unreasonable as to demonstrate that they were discriminating against [plaintiff] because of his disability.'" *Anderson v. County of Siskiyou*, No. C 10-01428 SBA, 2010 WL 3619821, at *5 (N.D. Cal. Sept. 13, 2010) (quoting *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 285 (1st Cir. 2006)); *see also Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 1004 (E.D. Cal. 2017) ("[P]laintiff alleges that defendants' actions deprived decedent of all . . . mental health services, and that they did so despite his clear need for that treatment and in defiance of a state court order. These allegations suffice to state a failure to accommodate claim under the ADA . . . .").

Plaintiffs ask the Court to follow *Anderson*. Some courts have disagreed with *Anderson* and have declined to follow it. *See Estate of Bock*, 2012 WL 423704 at *10 (citing cases). This Court agrees that *Anderson* and similar cases are contrary to Ninth Circuit precedent that "inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld *by reason of* a disability." *Marlor*, 50 F. App'x at 873. Because Plaintiffs have not pled that Wilson was denied medical care because of his heart condition, they have not pled an ADA claim and the Court

1 | **GRANTS** the Motion to Dismiss this claim.

2 |     Further, because "[t]here is no significant difference in analysis of the rights

3 | and obligations created by the ADA and the Rehabilitation Act," *Zukle v. Regents of*

4 | *Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999), the Court concludes the

5 | same is true for Plaintiffs' claim under section 504 of the Rehabilitation Act and

6 | **GRANTS** the Motion to Dismiss the Rehabilitation Act claim.  The dismissals are

7 | without prejudice.

8 | **IV.   CONCLUSION**

9 |     For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN**

10 | **PART** the Motion to Dismiss as detailed herein.  Plaintiffs may file an amended

11 | complaint on or before July 31, 2020.  If Plaintiffs choose not to file an amended

12 | complaint, Defendants must file an answer on or before August 7, 2020.

13 |     **IT IS SO ORDERED.**

14 | **DATED: July 10, 2020**

15 |                        **Hon. Cynthia Bashant**
                       **United States District Judge**