# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF MICHAEL WILSON by and through its administrator PHYLLIS JACKSON, and PHYLLIS JACKSON,<br><br>                      Plaintiffs,<br><br>  v.<br><br>COUNTY OF SAN DIEGO; WILLIAM GORE; BARBARA LEE; and DOES 1–100,<br><br>                      Defendants. | Case No. 20-cv-00457-BAS-DEB<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**<br><br>**(ECF No. 33)** |

Plaintiffs move for leave to file a First Amended Complaint ("FAC"). (Motion for Leave to File FAC ("Motion" or "Mot."), ECF No. 33.) The proposed FAC attached to the Motion adds Doe defendants, rewrites and expands the introductory and substantive allegations, alters information about Plaintiff Phyllis Jackson and her relationship to the decedent, Michael Wilson, changes the labels on the causes of action, and seeks to restate the negligence claim against the County under a theory of respondeat superior. (FAC, ECF No. 33-2.) The County opposes the Motion, indicating that it does not oppose the addition of the Doe defendants but does oppose the addition of the altered information about the relationship between Phyllis Jackson and Mr. Wilson and the County as a defendant to the dismissed negligence cause of action. (Opposition to Mot. ("Opposition" or "Opp'n"), ECF No. 38.) Plaintiffs reply. (ECF No. 39.) For the reasons stated below, the Court **GRANTS** the Motion.

## I. BACKGROUND

On February 14, 2019, Michael Wilson died from heart failure. (Compl. ¶¶ 34–35.) Prior to his death, Mr. Wilson was incarcerated at the San Diego Central Jail. (*See id.* at 1.) He collapsed in his cell, was transported to UCSD Medical Center, and passed away. (*Id.* ¶ 34.) The initial suit was brought against the County of San Diego, Sheriff William Gore, Alfred Joshua, Barbara Lee, and various Doe defendants, members of the SDCJ staff. (*See generally*, Compl.)

On July 10, 2020, the Court granted in part Defendants' Motion to Dismiss. (*See generally*, Order Granting in Part and Denying in Part Mot. to Dismiss ("Order"), ECF No. 17.) Pertinent to the Motion to Dismiss, the Court dismissed the negligence claim against the County without prejudice because Plaintiffs had not identified any statute or enactment that would impose a duty upon the County. (*Id.* at 12–13.) The Court, however, denied the motion to dismiss with regard to a separate *Monell* count alleged against the County. (*Id.* at 9–10.) The Court granted Plaintiffs leave to file an amended complaint by July 31, 2020. (*Id.* at 17.) Plaintiffs elected not to do so.

On January 15, 2021, Plaintiffs filed the instant Motion, attaching a proposed FAC. The proposed FAC has four major changes. First, the FAC proposes to add ten defendants and dismiss defendant Alfred Joshua. (*See* FAC, Caption.) Second, the FAC adds extensive introductory and substantive allegations, some but not all of which pertain to the newly added Defendants. (FAC ¶¶ 26–80, 102m–o, 120, 145, 176, 201.) Third, instead of identifying Plaintiff Phyllis Jackson as Mr. Wilson's "mother," the FAC changes her relationship to his "equitably adopted mother" who "has been appointed a special administrator" to his Estate. (*Id.* ¶ 4.) And fourth, the FAC adds the County back into the negligence cause of action. (*See id.*, Sixth Cause of Action.) The Court discusses these additions in more detail below.

### A. New Defendants

Plaintiffs add new allegations against ten defendants including Louis Gilleran, who was the interim Chief Medical Officer for the San Diego County Sheriff's Department at

the time of Wilson's death. (FAC ¶ 13.) Gilleran allegedly supervised the medical staff including defendant contractors. (*Id.*) Plaintiffs also add allegations against Dr. Peter Freedland, who allegedly failed to treat Wilson for his serious medical condition, and Nurse Practitioner Vincent Gatan, who noted Wilson had received no medication, had a history of trouble breathing, and suffered from congenital heart failure. (*Id.* ¶¶ 43–46, 56.) The FAC also adds claims against Coast Correction Medical Group ("CCMG") and its President and CEO Mark O'Brien. (*Id.* ¶ 14.) Plaintiffs allege CCMG is a third-party contractor who employed, supervised, and trained defendants Freeland and Gatan. (*Id.*)

The FAC also adds claims against nurses Anil Kumar, who allegedly failed to check Mr. Wilson's chart to provide him his heart medication, and Rizalina Bautista, who allegedly conducted a medical screening of Mr. Wilson but failed to give critical medical information to deputies at who would make housing determinations for Wilson. (FAC ¶¶ 32, 71.) The FAC also makes allegations against two other employees: Marylene Ibanez—who "refused to provide Michael his Lasix or other heart medication" and "failed to expedite the medical visit or schedule a visit with a doctor given Michael's severe condition"—and Macy Germono, who "noted that Michael would catch his breath whenever he spoke and that he was in moderate distress" but "did not refer to the County's Standardized Nursing Procedure for chest pain which takes into consideration cardiac disease." (FAC ¶¶ 35–37, 54.) Finally, the FAC adds claims against Laucet Garcia, a deputy who made housing determinations for Mr. Wilson and failed to place Mr. Wilson in the medical unit. (FAC ¶¶ 67–69.)

**B.    Relationship Between Michael Wilson and Phyllis Jackson**

In the Complaint, Plaintiff Phyllis Jackson was identified as Mr. Wilson's mother. (Compl. ¶ 4.) The FAC now corrects that original allegation. It explains that Ms. Jackson began caring for Mr. Wilson when he was three months old. She intended to adopt him but opted to obtain legal guardianship in lieu of adoption because of the "extraordinary medical costs related to Michael's heart condition." (FAC ¶ 6.) She held Mr. Wilson out to be her child and he referred to her as his mother. (*Id.*) Mr. Wilson resided with Ms.

Jackson throughout his childhood and after he turned 18. (*Id.*) At the time of his death at the age of 32, he "continued to reside with Ms. Jackson in her home." (*Id.*) Thus, although Ms. Jackson did not officially adopt Mr. Wilson, she was his "equitably adopted mother." (FAC ¶ 4.) She also "has been appointed a special administrator" to his Estate. (*Id.*)

### C. Negligence Claim Against the County

In the FAC, the Sixth Cause of Action for Negligence is alleged against the newly-added defendants as well as the County, which the FAC claims is "responsible for the act of individuals and Doe defendants under the theory of respondeat superior." (FAC ¶ 205.)

## II. LEGAL STANDARD

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]his policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "[S]ince Rule 15 favors a liberal policy towards amendment, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted." *Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989) (citing *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed. Cir. 1986)).

Although the decision whether to allow amendment is within the court's discretion, "[i]n exercising its discretion, a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *DCD Programs, Ltd. V. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quotation omitted). Denial of the request to amend is only proper when it "would be clearly frivolous, unduly prejudicial, cause undue delay or a finding of bad faith is made." *United Union of Roofers, Waterproofers and Allied Trades No. 40 v. Insurance Corp. of America*, 919 F.2d 1398, 1402 (9th Cir. 1990).

## III. ANALYSIS

Defendants do not object to the proposed amendments adding the new ten defendants and the extensive new allegations. (Opp'n at 3.) They only object on two grounds: (1)

- 4 -

20cv457

Plaintiffs should not be allowed to change the allegations referring to Ms. Jackson's relationship to Mr. Wilson, and (2) Plaintiffs should not be allowed to circumvent the Court's previous order dismissing the negligence claim against the County. (*Id.* at 1.)

### A.  Allegations Regarding Ms. Jackson's Relationship with Mr. Wilson

Defendants do not argue that the new allegations about Ms. Jackson are clearly frivolous or made in bad faith. And although Defendants complain that the allegations were known at the time the original Complaint was filed, amending the allegations will not be unduly prejudicial or cause undue delay. This case is still in the early stages. Plaintiffs represent that no depositions have been taken. Plaintiffs are adding ten new defendants who have not yet been served or answered the Complaint. Therefore, adding allegations regarding Ms. Jackson will not delay the case any more than it has already been delayed. Finally, there is no evidence of bad faith as to the new allegations. Given the liberality with which this Court must view any request to amend, the Court will allow Plaintiffs' leave to add allegations in the FAC concerning Ms. Jackson's relationship to Mr. Wilson.

### B.  Plaintiffs' Respondeat Superior Negligence Claim Against the County

The Court previously dismissed the County from the negligence cause of action but gave Plaintiffs leave to amend the Complaint. (*See* Order at 12–13, 17.) Plaintiffs did not file an amended complaint. Rather, they now seek to allege a negligence claim against the County under a theory of respondeat superior. (*See* Reply at 6.)

Defendants argue that Plaintiffs should not be permitted to add this allegation because they forfeited that right when they failed to timely file an amended complaint in response to this Court's July 10, 2020 Order. (Opp'n at 5.) However, Defendants do not identify, and the Court does not find, any prejudice, bad faith, or undue delay that would result from this amendment. Because the County has been a party to this case since its inception, amending the allegations to add a respondeat superior liability claim will not result in prejudice or delay the action. Indeed, a vicarious liability claim against the County, as opposed to a direct liability claim, requires only that Plaintiffs plead and prove tortious conduct by the tortfeasor-employees and not by the County itself, thus simplifying

the issues before the parties and the Court. *See de Villers v. Cty. of San Diego*, 156 Cal. App. 4th 238, 247 (2007) (to demonstrate vicarious liability, the injured party must show "the tortfeasor-employee was liable for committing the tortious conduct that caused the injury while acting within the course and scope of his or her employment"). Further, the Court finds no evidence of bad faith, noting that Plaintiffs discovered the facts underlying the claims of wrongful conduct through written discovery that was obtained after the Court's deadline to file their amended pleading had passed. (*See* Mot. at 5.)

Again, cognizant of the liberal policy toward amendment, *see Morongo*, 893 F.2d at 1079, the Court will permit Plaintiffs to add a respondeat superior liability claim against the County in Plaintiffs' Sixth Cause of Action for negligence.

## IV.   CONCLUSION

The Court **GRANTS** the Motion for Leave to File a FAC. (ECF No. 33.) Defendant Alfred Joshua is dismissed from the case. Plaintiffs shall file a final version of their proposed FAC (ECF No. 33-2), without the redlining, on the public docket by **April 14, 2021**. Because the FAC names additional party defendants, the Clerk shall issue an amended summons once the FAC is filed.

**IT IS SO ORDERED.**

DATED: April 12, 2021

Hon. Cynthia Bashant
United States District Judge