# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF MICHAEL WILSON, by and through its successor-in-interest, PHYLLIS JACKSON, and PHYLLIS JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.: 3:20-cv-00457-RBM-DEB<br><br>**ORDER:**<br><br>**(1) DENYING CCMG'S DAUBERT MOTION TO PRECLUDE EXPERT OPINION FROM PLAINTIFF'S EXPERT DR. ALON STEINBERG REGARDING CORRECTIONAL STANDARD OF CARE**<br><br>**(2) GRANTING IN PART AND DENYING IN PART THE COUNTY'S MOTION TO EXCLUDE OPINION TESTIMONY BY PLAINTIFF'S EXPERT DR. ALON STEINBERG**<br><br>**[Docs. 97, 99]** |

On June 13, 2023, the CCMG Defendants filed a *Daubert* motion to preclude the expert opinion/ testimony from Plaintiff's expert Dr. Alon Steinberg regarding the correctional standard of care ("CCMG's Motion"). (Doc. 97.) The same day, the County Defendants filed a motion to exclude opinion testimony by Plaintiff's expert Dr. Alon

1

Steinberg ("County's Motion"). (Doc. 99.) In CCMG's Motion, it argues Dr. Steinberg's expert opinion should be precluded because his standard of care opinion is not based on published peer reviewed standards, and he is not an expert in the correctional standard of care. (Doc. 97 at 7–11.)[1] In the County's Motion, it argues Dr. Steinberg's expert opinion should be excluded because he offers no opinion on the individual nurse or supervisory Defendants, and he is not an expert on correctional medicine. (Doc. 99 at 1–5.) On August 2, 2023, Plaintiff filed a brief in opposition to CCMG's Motion (Doc. 110), and a brief in opposition to the County's Motion (Doc. 111). On August 30, 2023, the CCMG Defendants filed a reply brief (Doc. 128), and the County Defendants filed a reply brief (Doc. 126).

For the reasons discussed below, CCMG's Motion is **DENIED** and the County's Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.     RELEVANT BACKGROUND

Plaintiff designated Dr. Alon Steinberg as an expert in cardiology who may provide testimony concerning "the standard of care provided to Michael Wilson and the results and consequences of the failure to provide care to Mr. Wilson." (Doc. 96-2 (Ex. Q) at 1.)[2]

In his deposition, Dr. Steinberg explained that he is not an expert in the standard of care for nurses. (Doc. 96 (Ex. U) ("Steinberg Dep.") 8:6–9.) Nor has he worked in a correctional facility, except for a brief period on an internal medicine rotation as a medical student about 30 years ago. (*Id.* at 9:15-16, 71:8-17.) He has never received any education, training, or experience regarding correctional medicine. (*Id.* at 9:17-19.) He is not familiar with the National Commission on Corrective Healthcare Standards ("NCCHS") nor any written or published standards specific to correctional health. (*Id.* at 9:20–25.) Dr. Steinberg did not consider himself an expert in the standard of care in correctional

---

[1] The Court cites the page number displayed on the docketed document, not the CM/ECF pagination, unless otherwise noted.
[2] The Court uses the pagination of the exhibit referenced unless otherwise noted.

medicine. (*Id.* at 10:1–3.) Nor did he know what resources a correctional healthcare provider has available for use in the jail. (*Id.* at 49:24–50:12.)

Dr. Steinberg does not intend to offer any opinion on the jail's policies or procedures. (*Id.* at 70:9–11.) With respect to Defendant Gore, Dr. Steinberg explained that some of his testimony will reflect on Defendant Gore if he is responsible for how things work at the jail. (*Id.* at 73:10–74:5.) Dr. Steinberg did not intend to offer any opinion regarding Defendants Germono, Ibanez, nor Kumar at trial. (*Id.* at 75:7-23, 76:8-22.)

In his declaration, Dr. Steinberg explained to properly opine on the cause of Wilson's death, he "must evaluate and assess the conduct of each medical provider at the Jail." (Doc. 110-1 (Ex. 1) ¶ 8.) Dr. Steinberg stated his "opinions on causation are intertwined by assessment and opinions regarding the conduct, or misconduct, of each individual defendant." (*Id.* at ¶ 9.) Dr. Steinberg asserted Wilson's heart condition "should have been treated in the same manner, whether he was incarcerated or receiving treatment at a clinic or hospital." (*Id.* at ¶ 10.) Dr. Steinberg added "[i]t would be obvious to any prudent medical provider that continuing life-saving medications in a person with severe congestive heart failure ("CHF") is clearly the standard of care in any environment." (*Id.* at ¶ 11.)

## II.   LEGAL STANDARD

Federal Rule of Evidence ("Rule") 702 governs the admissibility of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The party offering expert testimony has the burden of establishing its admissibility." *Bldg. Indus. Ass'n of Washington v. Washington State Bldg. Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012).

Before finding expert testimony admissible, the trial court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993). "Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147–49 (1999)).

The Court must find "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 590. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). "[T]he court must assess [an expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano*, 598 F.3d at 564). "Reliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible." *Id.* (citing *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007)).

The inquiry required by Rule 702 "is a flexible one." *Daubert*, 509 U.S. at 594; *see also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (citing *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969). "In evaluating proffered expert testimony, the trial court is 'a gatekeeper, not a fact finder.'" *City of Pomona*, 750 F.3d at 1043 (quoting *Primiano*, 598 F.3d at 565). "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury." *Id.* at 1044. "Shaky but

4

admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564 (citing *Daubert*, 509 U.S. at 596).

### III. DISCUSSION

A. <u>Correctional Standard of Care</u>

The CCMG and County Defendants argue Dr. Steinberg, a cardiologist, is unqualified to opine on the standard of care for correctional healthcare providers because he is not an expert in correctional medicine and his opinions are not the product of reliable principles and methods. (*See* Doc. 97-1 at 4, 7–12; Doc. 99-1 at 4–5.) Plaintiff responds that the standard of care for inmates is not different than it is for persons outside of prison and that Dr. Steinberg's causation opinion requires an analysis of how each individual Defendant's actions contributed to Wilson's death. (*See* Doc. 110 at 1–4.) Plaintiff further argues that Dr. Steinberg's opinions are based on published guidance discussing the treatment of individuals with cardiovascular disease. (*See id.* at 4–5.) The CCMG Defendants respond with objections to Dr. Steinberg's declaration and Plaintiff's reliance on a non-designated expert's opinion from a different case. (*See* Doc. 128 at 2–4.) The CCMG Defendants further respond that there is a difference between the standard of care in correctional and non-correctional medicine and that Dr. Steinberg's causation opinion does not require opining on the standard of care of individual Defendants. (*See id.* at 4–7.) The County Defendants respond that the standard of care in correctional settings is different than that for non-correctional settings, and that Dr. Steinberg cannot opine on the standard of care for nurses. (*See* Doc. 126 at 3–5.) The Court has reviewed Dr. Steinberg's expert report. (*See* Doc. 96-2 (Ex. S), Dr. Alon Steinberg Expert Report ("Steinberg Report").)

In *Ball v. Kootenai County*, a deliberate indifference case, the defendants argued that the plaintiff's expert witness, a cardiologist, was unqualified to render opinions because he was not an expert in correctional medicine and was not familiar with the correctional nursing standards of care. *See* Case No. 2:14-cv-00246-EJL-CWD, 2016 WL 4974949, at

\*5 (D. Idaho 2016). The district court declined to exclude the expert. *Id.* at \*6. The district court noted that the defendants did not challenge the expert's qualifications as a cardiologist or his opinions that went toward the causation of the plaintiff's injuries. *Id.* And the district court criticized the defendants for failing to cite any statutory authority or case law supporting their position. *Id.* at \*5–6. Here, the CCMG Defendants do not appear to challenge Dr. Steinberg's qualifications as a cardiologist or his causation opinion, but they do cite several cases in support of their position.

The CCMG Defendants argue that this case parallels *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807 (9th Cir. 2014). (*See* Doc. 97-1 at 8.) In *Pyramids Techs., Inc*, the Ninth Circuit reviewed a district court's exclusion of an expert's report for basing his opinion on insufficient facts and data. *Id.* at 817. Specifically, the expert opined that an opposing expert's opinion was improper for using military standards of suitability instead of commercial standards in testing selected parts from the plaintiff's inventory. *Id.* At his deposition, the expert testified that he did not know what standards should have been used instead and was not aware of the governing commercial standards because it was not his field of expertise. *Id.* The Ninth Circuit concluded that, under those circumstances, the district court did not abuse its discretion in excluding the expert's report. *Id.*

The facts of *Pyramids Techs., Inc* are inapposite. Dr. Steinberg has not stated another expert failed to use a particular standard of care of which Dr. Steinberg is himself unaware. Rather, Dr. Steinberg's opinion is the Defendants failed to take actions in addressing Wilson's CHF and need for cardiac medication, which contributed to his death.

The CCMG Defendants also rely on *Dukes v. Georgia*, 428 F. Supp. 2d 1298 (N.D. Ga. 2006). (*See* Doc. 97-1 at 9–11.) In *Dukes*, a deliberate indifference and medical malpractice case, the district court found Georgia's heightened standards for experts in medical malpractice cases applicable to the plaintiff's expert. *See id.* at 1310–13. Under these heightened standards, the district court found the expert was qualified in the field of correctional medicine. *See id.* at 1314. However, the district court found the expert's opinions regarding correctional staff's failure to engage in earlier treatment of the

plaintiff's cryptococcal meningitis, a condition the expert had not personally treated, and the standards for correctional health care, were unreliable. *See id.* at 1314–15. Specifically, the district court found the expert failed to specify what standards or specific experience he relied on in rendering his opinions. *See id.* at 1315–16; *see also Burleson v. Texas Dep't of Crim. Just.*, 393 F.3d 577, 585–87 (5th Cir. 2004) (finding district court did not abuse discretion in excluding expert's opinion as unreliable where the expert presented "no studies which demonstrate a statistically significant link between thorium dioxide exposure in dust or fumes and [the plaintiff's] type of lung or throat cancer.").

Unlike the expert in *Duke*, Dr. Steinberg's opinions in his expert report are based on his extensive experience treating patients with cardiomyopathy and CHF. Thus, Dr. Steinberg has adequately grounded his opinions in his relevant experience treating patients with cardiomyopathy and CHF.

The County Defendants rely on *Ocampo v. Corizon, LLC.*, No. 1:18-cv-00047-DCN, 2020 WL 6219790 (D. Idaho Oct. 21, 2020) to argue that Dr. Steinberg's opinion should be excluded. In *Ocampo*, a deliberate indifference case, the district court did not exclude, but rather gave very little weight, to a nurse's testimony because she had no experience in correctional medicine, did not familiarize herself with correctional medicine standards, and had no experience with the disease at issue in the case. *See id.* at *6–8. Unlike in *Ocampo*, Dr. Steinberg has extensive experience in treating patients with CHF. And any lack of experience or knowledge concerning the standards in correctional facilities goes to the weight, not admissibility, of Dr. Steinberg's testimony.

Additionally, the Court is not convinced that correctional providers are held to a different standard of care. *See D.C. v. Mitchell*, 533 A.2d 629 (D.C. 1987) ("We disagree with the court's premise that physicians who serve a prison population may be held to a standard of care different from the one imposed on physicians in other contexts."); *see also Nelson v. State of California*, 139 Cal. App. 3d 72, 81 (1982) ("Once a practitioner has been summoned to examine and treat a prisoner, he or she is under a duty to exercise that degree of diligence, care, and skill such as is ordinarily possessed by other members of the

profession. Failure to do so is malpractice."). But even if they were, the CCMG and County Defendants have failed to explain (1) why the standard of care applicable to non-correctional healthcare providers does not apply to correctional healthcare providers or (2) why the standards of correctional medicine are distinct in a material way when applied to the facts at hand.

Thus, the Court **DENIES** CCMG's Motion and County's Motion to preclude or exclude Dr. Steinberg's opinions due to his unfamiliarity with the correctional standard of care.[3] For these reasons, the Court also overrules the CCMG Defendants' objection to Dr. Steinberg's deposition.[4]

B. Standard of Care Provided to Wilson

The County Defendants move to preclude or exclude Dr. Steinberg's opinions under Federal Rule of Evidence 403 and for lack of foundation. (*See* Doc. 99-1 at 2.) The County Defendants fail to make any specific argument under Rule 403. Thus, the Court declines to preclude or exclude Dr. Steinberg's opinion on that basis.

The County Defendants further criticize Dr. Steinberg for not offering opinions concerning the individual nurse and supervisory Defendants. (*See id.* at 3–4.) Plaintiff responds that Dr. Steinberg's causation opinion requires an analysis as to how each medical provider's actions contributed to Wilson's death. (*See* Doc. 111 at 1.) The County Defendants respond that they agree with Plaintiff, but that Dr. Steinberg failed to offer any opinions as to any of the County Defendants during his deposition. (*See* Doc. 126 at 1–2.)

---

[3] The CCMG Defendants argue that Dr. Steinberg can still render a causation opinion without opining on whether individual Defendants breached the standard of care. (*See* Doc. 128 at 6–7.) Specifically, they argue that Dr. Steinberg could take Dr. Venters' conclusions regarding breaches of the standard of care in correctional medicine and determine whether those breaches had any causal relationship to the ultimate injury. (*See id.*) In light of the Court's ruling concerning the correctional standard of care, the Court need not resolve the CCMG Defendants' argument.

[4] The Court notes that it did not rely on any non-retained expert's opinion in rendering its decision. (*See* Doc. 128 at 3–4.)

8

In the summary of facts in Dr. Steinberg's expert report, he notes actions that physicians and nurses, including Defendants Dr. Peter Freedland, Anil Kumar, Marylene Ibanez, Macy Germono, and Vincent Ronald Natan, took and/or failed to take. (*See* Doc. 96-2 at 3–5.) In the opinion section of his report, Dr. Steinberg chiefly criticizes the physicians, including Dr. Arturo Leon and Defendant Freedland, for failing to take certain steps and/or respond to Wilson's condition. (*See id.* at 11.) Dr. Steinberg also criticizes unspecified medical providers for appearing to be unaware of Wilson's prior history, failing to perform an adequate or complete history, failing to ensure Wilson was on and taking his critically important CHF medications, examining Wilson in the hallway rather than an examination room, and showing no particular interest in his medical condition and complaints. (*See id.* at 11–12.) Dr. Steinberg concluded that the failure to give Wilson his cardiac medications led to his death. (*See id.*)

Nowhere in Dr. Steinberg's report does he address the standard of care for either physicians or nurses. In fact, Dr. Steinberg noted he was not qualified to render a standard of care opinion for nurses. (*See* Steinberg Dep. 73:6–9.) Dr. Steinberg explained during his deposition that his opinions in his report were supported by the 2022 AHA/ACC/HFSA Guideline for the Management of Heart Failure: A Report of the American College of Cardiology/American Heart Association Joint Committee on Clinical Practice Guideline. (*See* Steinberg Dep. 22:19–23:11; Doc. 110-6 (Ex. 6).) Nowhere in Dr. Steinberg's report does he mention this guideline, which came out long after Wilson's death. Nor was the disclose of this guideline during Dr. Steinberg's deposition timely as it was not contained or mentioned in his expert report or a supplemental report. *See Icon-IP Pty Ltd. v. Specialized Bicycle Components*, Inc., 87 F. Supp. 3d 928, 949 (N.D. Cal. 2015) (precluding expert's opinion concerning phone conversations that formed the basis of his opinions in his report but were not disclosed until his deposition).

During his deposition, Dr. Steinberg declined to offer opinions regarding the individual nurse and supervisory Defendants. (*See* Steinberg Dep. 73:10–76:22.) However, in his expert report, Dr. Steinberg provided opinions concerning deficiencies in

physicians' examinations of Wilson, including Dr. Leon and Defendant Freedland, and the failure of medical providers to ensure he was taking his critically important medications for CHF. (*See* Steinberg Report at 9–12.) While Dr. Steinberg can opine on deficiencies in the care Wilson received and how that may have contributed to his death, he is precluded from opining on the actions of specific nurse Defendants and the standard of care. He is also precluded from offering opinions regarding the actions of the supervisory Defendants as his report says nothing regarding their actions.

Thus, the Court **GRANTS** the County's Motion only in so far as precluding Dr. Steinberg from offering opinions regarding the actions of specific nurse Defendants and the standard of care.

## IV.  CONCLUSION

For the reasons discussed above, CCMG's Motion is **DENIED** and County's Motion is **GRANTED IN PART** and **DENIED IN PART**. (Docs. 97, 99.)

**IT IS SO ORDERED.**

DATE:  December 1, 2023

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE