# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF MICHAEL WILSON, by and through its successor-in-interest, PHYLLIS JACKSON, and PHYLLIS JACKSON,<br><br>                                        Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                                        Defendants. | Case No.:  3:20-cv-00457-RBM-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION TO CERTIFY AS FRIVOLOUS DEFENDANTS' INTERLOCUTORY APPEAL FROM THE COURT'S DENIAL OF SUMMARY JUDGMENT**<br><br>**(2) DENYING DEFENDANTS' JOINT EX PARTE MOTION FOR STAY PENDING APPEAL**<br><br>**[Docs. 148, 154]** |

This case concerns the death of 32-year-old Michael Wilson, who was serving a two-week flash incarceration at the San Diego Central Jail for a probation violation.  Wilson had a history of hypertrophic cardiomyopathy ("HCM") and congestive heart failure ("CHF") and had a heart pacer.  Prior to his incarceration, he took four cardiac medications to manage his heart condition.  Before his booking, the remanding court warned the jail medical staff in writing that Wilson had serious medical issues.

1

During the first six days of his incarceration, Wilson did not receive any of his cardiac medications. He missed 36 doses of those medications. Over the next three days, he received only six doses of some of his medications, but his prescriptions required 18 doses. On the morning of the tenth day, Wilson passed away due to sudden cardiac death arising from acute CHF and HCM.

Pending before the Court is Defendants' joint *ex parte* motion for stay pending appeal ("Stay Motion") (Doc. 148). Plaintiff filed an opposition to Defendants' Stay Motion. (Doc. 152.) In Defendants' Stay Motion, they explain that Defendants Macy Germono, Marylene Ibanez, and Anil Kumar (collectively, the "Nurse Defendants") filed a notice of interlocutory appeal to the Ninth Circuit concerning this Court's qualified immunity ruling on summary judgment (Doc. 147) and ask this Court to stay this entire action until the appeal is resolved. (Doc. 148 at 2.)[1]

Additionally, pending before the Court is Plaintiff's motion to certify as frivolous Defendants' interlocutory appeal from the Court's denial of summary judgment ("Frivolity Motion") (Doc. 154). Defendants filed an opposition to Plaintiff's Frivolity Motion ("Opposition"). (Doc. 161.) Plaintiff filed a reply brief in support of its Frivolity Motion. (Doc. 162.) In Plaintiff's Frivolity Motion, Plaintiff asks this Court to certify the Nurse Defendants' interlocutory appeal as frivolous. (Doc. 154-1 at 5.) In Plaintiff's Frivolity Motion, it argues the Nurse Defendants' interlocutory appeal is frivolous because (1) circumstantial evidence raises triable issues of fact regarding the Nurse Defendants' knowledge of a substantial risk of harm to Wilson, (2) Defendants' interlocutory appeal does not raise purely legal issues, and (3) the Court conducted an individualized qualified immunity analysis as to each Defendant. (*Id.* at 9–17.) The Court need not address the third argument as Defendants do not address this point in opposition to Plaintiff's Frivolity Motion. (Doc. 161.) However, to the extent the case law in Plaintiff's Frivolity Motion is

---

[1] The Court cites the CM/ECF pagination unless otherwise noted.

relevant to the qualified immunity analysis, the Court takes that case law into consideration. In the Frivolity Motion, Plaintiff adds that, if the Court is not inclined to certify the Nurse Defendants' appeal as frivolous, Plaintiff may dismiss the § 1983 claims against the Nurse Defendants "in the interest of proceeding without further delay." (Doc. 154-1 at 17.)

The Court finds these matters suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, Plaintiff's Frivolity Motion is **GRANTED** and Defendants' Stay Motion is **DENIED**.

## I.   RELEVANT BACKGROUND

The factual and legal background concerning the Court's denying summary judgment to the Nurse Defendants on Plaintiff's deliberate indifference to serious medical needs claim and on the Nurse Defendants' qualified immunity defense can be found in the Court's Order granting in part and denying in part the CCMG and County Defendants' motions for summary judgment. (Doc. 142 at 7–10, 14–16, 18, 32–41, 45–49.)

## II.   LEGAL STANDARD

### A. Frivolity

"[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). In the Ninth Circuit, where "the interlocutory claim is immediately appealable, its filing divests the district court of jurisdiction to proceed with trial." *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992). However, with respect to an interlocutory appeal on the issue of qualified immunity, "[s]hould the district court find that the defendants' claim of qualified immunity is frivolous or has been waived, the district court may certify, in writing, that defendants have forfeited their right to pretrial appeal, and may proceed with trial." *Id.*

"An appeal is frivolous if the results are obvious, or the arguments of error are wholly without merit." *In re George*, 322 F.3d 586, 588 (9th Cir. 2003) (quoting *Maisano v. United States*, 908 F.2d 408, 411 (9th Cir. 1990)). "District courts have certified appeals

3

of qualified immunity as frivolous where (1) defendants claim to rely on, but do not actually rely on, the plaintiff's version of the facts, or (2) where defendants' legal arguments run afoul of clearly established law." *Henderson v. City of Torrance*, Case No. CV 18-3918-MWF (EX), 2021 WL 3185479, at *3 (C.D. Cal. Apr. 5, 2021). Thus, to determine whether the interlocutory appeals of the Nurse Defendants are frivolous, the Court examines whether there is any merit to their qualified immunity argument under Plaintiff's version of the facts.

**B. Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity shields an officer from liability even if his or her action resulted from "'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)).

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A right is "clearly established" when, "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"[C]learly established law should not be defined at a high level of generality." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Rather, it "must be 'particularized' to the facts of the case." *Id.* (internal citation omitted). Courts must not define clearly established law "at a high level

of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *D.C. v. Wesby*, 583 U.S. 48, 63–64 (2018). At the same time, "[i]t is not necessary to have a case involving a heart attack, a case involving appendicitis, or a case involving a bowel obstruction for a § 1983 claim based on one of those conditions to survive qualified immunity." *Russell v. Lumitap*, 31 F.4th 729, 737–38 (9th Cir. 2022). There need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 at 741. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust consensus of cases of persuasive authority." *Wesby*, 583 at 63 (internal quotation marks and citations omitted).

"[O]fficials can be on notice that their conduct violates established law even in novel factual situations." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question" even if the specific action in question has not previously been held unlawful. *Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020) (quoting *Hope*, 536 U.S. at 741).

"If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end. On the other hand, when 'there are relatively few cases on point, and none of them are binding,' we may inquire whether the Ninth Circuit or Supreme Court, at the time the out-of-circuit opinions were rendered, would have reached the same results." *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004) (quoting *Capoeman v. Reed*, 754 F.2d 1512, 1515 (9th Cir. 1985)). Thus, in the absence of binding precedent, we "'look to whatever decisional law is available to ascertain whether the law is clearly established' for qualified immunity purposes, 'including decisions of state courts, other circuits, and district courts.'" *Id.* (quoting *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir. 2003)).

"It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir.

2017) (internal quotation marks and citation omitted).  "However, because resolving whether the asserted federal right was clearly established presents a pure question of law, [the court] draw[s] on [its] full knowledge' of relevant precedent rather than restricting [its] review to cases identified by the plaintiff."  *Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (citing *Elder v. Holloway*, 510 U.S. 510, 516 (1994)); *see also Gomez v. City of Vacaville*, 483 F. Supp. 3d 850, 867 (E.D. Cal. 2020) (same); *Brown v. Grinder*, No. 2:13-cv-01007-KJM-KJN, 2019 WL 280296, at *15 (E.D. Cal. Jan. 22, 2019) ("[B]ecause resolving whether the asserted federal right was clearly established presents a pure question of law, the court is not aware of any reason it should not draw on its full knowledge of relevant precedent in laying a strong foundation at the trial court level, rather than restricting its review to cases identified by plaintiff.") (internal quotation marks and citation omitted).  The Court may also look at unpublished decisions.  *See Jessop v. City of Fresno*, 936 F.3d 937, 941 (9th Cir. 2019) ("[W]e may look at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent.") (quoting *Prison Legal News v. Lehman*, 397 F.3d 692, 702 (9th Cir. 2005)).

### III.   DISCUSSION

#### A. Deliberate Indifference[2]

The Nurse Defendants appear to challenge the Court's ruling on Plaintiff's Eighth Amendment deliberate indifference claim against them because there was "no evidence that any Defendant/Appellant drew [the] inference" of a substantial risk of harm under

---

[2] While the Nurse Defendants claim an action taken under the color of state law must be a misuse of state power under § 1983, it is not clear whether they intend this new theory, raised for the first time in their opposition, as commentary or a legal argument.  (*See* Doc. 161 at 11.)  In any event, the Court rejects such an argument as meritless.  "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."  *West v. Atkins*, 487 U.S. 42, 50 (1988).  It has long been settled that prison medical staff act under the color of state law when treating inmate-patients.  *See id.* at 55–57 (finding physician contracting with state acted under color of state law in deliberate indifference to serious medical needs case).

*Farmer v. Brennan*, 511 U.S. 825, 837, 842–43 (1994).  (Doc. 161 at 12–13.)  Plaintiff argues that a prison official's subjective knowledge of a substantial risk of harm is a question of fact that can be demonstrated through circumstantial evidence.  (Doc. 154-1 at 6, 9–12 (citing *Farmer*, 511 U.S. at 842).)

The Nurse Defendants' argument is meritless.  To the extent the Nurse Defendants contest the genuine disputes of material fact found by this Court, those findings are unreviewable on an interlocutory appeal.  *See Est. of Anderson v. Marsh*, 985 F.3d 726, 730–31 (9th Cir. 2021) ("[A]ny 'portion of a district court's summary judgment order that, though entered in a 'qualified immunity' case, determines only a question of 'evidence sufficiency,' i.e., which facts a party may, or may not, be able to prove at trial ... is not appealable.'") (quoting *Johnson v. Jones*, 515 U.S. 304, 313 (1995)); *Ames v. King Cnty.*, 846 F.3d 340, 347 (9th Cir. 2017) ("Where the district court has determined the parties' evidence presents genuine issues of material fact, such determinations are not reviewable on interlocutory appeal.").

In any event, in *Farmer*, the Supreme Court held that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  511 U.S. at 842 (internal citations omitted).[3]  The Nurse Defendants do not quibble with *Farmer*'s holding.  Rather, they argue the evidence of their knowledge in this case did not come close to *Farmer*'s example concerning a longstanding and well-documented risk of inmate attacks, of which "circumstances suggest[ed] the

---

[3] Additionally, the Supreme Court noted that "[w]hile the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him, he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist[.]"  *Id.* 843 n.8 (internal citations omitted).

defendant-official" was exposed.  (Doc. 161 at 12–13.)  Of course, the Supreme Court's example in *Farmer* merely reflected the allegations in that case concerning prison officials' deliberate indifference to the petitioner's safety.  *See* 511 U.S. at 829–30, 842–43.  That example does not limit *Farmer*'s holding that a defendant's knowledge of a substantial risk is a question of fact that can be demonstrated by inferences drawn from circumstantial evidence or the obviousness of a risk.  *See id.* at 842–43; *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) ("Much like recklessness in criminal law, deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm.") (citing *Farmer*, 511 U.S. at 842; *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)).

Here, viewing the evidence and drawing all reasonable inferences in the light most favorable to Plaintiff, the Court correctly found genuine issues of material fact as to whether the Nurse Defendants were aware of a substantial risk to Wilson's health and safety.  (*See* Doc. 142 at 35–36, 40 (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).).  Each of the Nurse Defendants, trained medical professionals, were aware of Wilson's history of CHF and HCM, the remanding court's warning to jail medical staff concerning his serious medical issues, his essential cardiac medications prescribed by a prison physician, and his not receiving those medications for many days or doses.  It is for the jury to determine whether each of the Nurse Defendants drew the inference that there was a substantial risk to Wilson's health and safety.

**B. Clearly Established**

**1.  Question Before the Court**

The Nurse Defendants argue that, for the Court to deny qualified immunity, it "must have reasonably concluded that *every* reasonable jail nurse would have understood, *beyond debate*, that his or her mere inaction, after reviewing a prisoner's jail medical records

documenting lifelong medical issues, violates the Eighth Amendment." (Doc. 161 at 14.)[4] Plaintiff responds that the Nurse Defendants "knowing inaction" *is* deliberate indifference. (Doc. 162 at 2.)

The Court rejects the Nurse Defendants' framing of the question because it implicitly fails to view the facts in a light most favorable to Plaintiff. *See Evans v. City of Vallejo*, No. 2:17-CV-01619-TLN-AC, 2022 WL 2160463, at *1 (E.D. Cal. June 15, 2022) ("[T]o present a reviewable issue with respect to qualified immunity on interlocutory appeal, '[t]he officials must present the appellate court with a legal issue that does not require the court to consider the correctness of the plaintiff's version of the facts...'") (quoting *Cunningham v. City of Wenatchee*, 345 F.3d 802, 807 (9th Cir. 2003)).  Viewing the facts in a light most favorable to Plaintiff, the question is whether every reasonable jail medical staff member would have understood that denying or delaying providing prescribed cardiac medications to an inmate-patient they knew had severe cardiac issues and had missed many days or doses of those medications is a constitutional violation.

### 2.  Prior Cases

The Court now addresses the parties' arguments concerning whether prior case law clearly established the constitutional violation in this case at the time of the Nurse Defendants' conduct.  As explained *supra* at II.B, the Court is not limited to considering the cases Plaintiff cites and may draw on its full knowledge of relevant precedent in addressing this legal question.

The Nurse Defendants contend *Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006) is distinguishable because the nurse in that case, in addition to knowing the inmate-patient had a heart condition and was not given his prescribed heart medication, knew the inmate-

---

[4] Elsewhere in the Nurse Defendants' Opposition, they contend the pertinent questions are: "Can a jail nurse be liable under the Eighth Amendment for unnecessary and wanton infliction of pain to a prisoner who was not in pain?  Or for inaction after reviewing a prisoner's medical records documenting lifelong medical problems?"  (*Id.* at 10–11.)

patient was experiencing severe chest pain.  (Doc. 161 at 14–15.)  The Nurse Defendants argue *Reed v. Barcklay*, 634 F. App'x 184 (9th Cir. 2015) is distinguishable because the physician defendant "deliberately chose" not to provide effective medication the inmate-patient had long been prescribed for serious migraines and "complained of significant pain." (*Id.* at 15–16.)  The Nurse Defendants argue *Egberto v. Nevada Dep't of Corr.*, 678 F. App'x 500 (9th Cir 2017) is distinguishable because the Ninth Circuit concluded a reasonable jury could find prison officials delayed treatment of the inmate-patient's back pain for non-medical reasons and a doctor noted the inmate-patient was in "excruciating" and "chronic" pain.  (*Id.* at 16.)  Lastly, the Nurse Defendants argue Plaintiff's citation to *Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006) is distinguishable because it did not involve alleged violations by jail nurses, the physician knew the prisoner was in pain and earlier treatment had been largely ineffective, and the physician "declined to do more to attempt to improve the prisoner's situation." (*Id.* at 16–17.)

Plaintiff responds that a right can be clearly established "despite a lack of factually analogous preexisting case law" and, here, "a robust consensus of authority established that medical professionals could not delay or deny prescription medication to patients with serious medical conditions." (*Id.* at 2–4.)  Lastly, Plaintiff argues that minor factual differences between this case and prior authority does not mean the unconstitutionality of the Nurse Defendants' conduct was not clearly established at the time of Wilson's death. (*Id.* at 4–5.)

The Nurse Defendants' arguments raise two pertinent questions: (1) whether a nurse can be on notice of unconstitutional conduct from prior cases concerning the deliberate indifference of physicians in denying, delaying, or intentionally interfering with medical treatment, and (2) whether a nurse, despite knowing of an inmate-patient's severe cardiac issues and that he had missed many days or doses of his prescribed cardiac medications, must know the inmate-patient is suffering from significant pain for their inaction to constitute deliberate indifference.

///

### a. Physicians and Nurses

The Nurse Defendants' argument that the deliberate indifference of physicians fails to put jail nurses on notice of unconstitutional conduct is wholly without merit in this case. First, the Ninth Circuit has relied on cases involving physicians denying, delaying, or intentionally interfering with medical treatment to determine whether the unconstitutional conduct of a nurse was clearly established. *See e.g.*, *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 678–79 (9th Cir. 2021) (relying in part on *Jett*, 439 F.3d at 1097–98, involving a physician defendant's delay of treatment of a fractured thumb, in denying qualified immunity to nurse who engaged in minimal, almost non-existent, course of treatment in response to a sweating, tired, and disoriented inmate-patient a deputy urged the nurse to re-evaluate); *Aytch v. Sablica*, 498 F. App'x 703, 704–05 (9th Cir. 2012) (citing *Jett*, 439 F.3d at 1098 and *Hunt v. Dental Dep't*, 865 F.2d 198 (9th Cir. 1989), involving prison dentist's alleged denial of inmate-patient's request for prompt treatment, in denying summary judgment to prison nurses regarding their delay in responding to inmate-patient's dental issues).

Second, the Ninth Circuit has not drawn a distinction in cases where both nurses and physicians are aware of a substantial risk of serious harm yet fail to reasonably respond or in cases where nurses unreasonably rely on a physician's outdated assessment. *See e.g.*, *Russell v. Lumitap*, 31 F.4th 729, 743–45 (9th Cir. 2022) (denying summary judgment on deliberate indifference claim to nurses who unreasonably relied on physician's hours-earlier assessment of inmate-patient with classic symptoms of a heart attack even though the symptoms had become far more severe); *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (reversing district court's grant of summary judgment to nurses and physician on deliberate indifference claim where they "knew of Ortiz's head injury but disregarded evidence of complications to which they had been specifically alerted and, without an examination, [the doctor] prescribed sedatives that were contraindicated[.]").

Lastly, the facts of this case do not raise concerns exclusive to the expertise of physicians as opposed to nurses or concern a nurse's reliance on a physician's timely

11

assessment of an inmate-patient.  *See Russell*, 31 F.4th at 744 (granting summary judgment on qualified immunity to nurse for deliberate indifference claim where the nurse called and relied on the on-call physician's evaluation and recommendation instead of hospitalizing inmate-patient for classic symptoms of a heart attack); *c.f. Pride v. Correa*, 533 F. App'x 745, 747 (9th Cir. 2013) (finding genuine disputes of material fact as to whether doctor and nurse were deliberately indifferent when doctor sent the unqualified nurse as his representative to a committee that declined to follow the inmate-patient's treating physician's recommendation and chose an inferior course of treatment).  Rather, it concerns the Nurse Defendants' knowledge of: (1) Wilson's severe cardiac issues, (2) the remanding court's warning to all jail medical staff concerning Wilson's serious medical needs, (3) Wilson's missing many days or doses of his prescribed cardiac medications, and (4) their failure to act upon that information.  *See Ortiz*, 884 F.3d at 1314 ("[A]ccess to medical staff is meaningless unless that staff is competent and can render competent care.") (quotation marks and citations omitted).  Thus, this argument is meritless in this case.

### b.  Significant Pain

The Nurse Defendants' argument that a nurse, despite knowing of an inmate-patient's severe cardiac issues and that he had missed many days or doses of his prescribed cardiac medications, must know the inmate-patient is suffering from significant pain for their inaction to constitute deliberate indifference is also meritless.  Clearly established law at the time of the Nurse Defendants' conduct in this case imposed no such requirement where prison officials deny, delay, or intentionally interfere with medical treatment.

To begin, the Nurse Defendants ignore the information that each of them were aware of when viewed in a light most favorable to Plaintiff.  Defendant Kumar knew Wilson had a history of CHF and HCM, that he had a left-sided heart pacer, that he was prescribed multiple heart medications by a prison physician, and that Wilson was complaining of not having received his medications—at that point four days into his incarceration.  (*See* Doc. 117-4 (Ex. 15), Kumar Dep. 74:23–75:2, 78:20–79:14, 81:17–23.)  Importantly, Defendant Kumar also knew about the remanding court's warning to jail medical staff that Wilson

1    "has some serious medical issues." (*See id.* at 82:6–12; Doc. 131, Joint Statement of
2    Undisputed Facts at 1.)

3         Five days into Wilson's incarceration, Defendant Ibanez knew the same information
4    Defendant Kumar knew above.  Defendant Ibanez also knew that Defendant Kumar merely
5    noted Wilson was scheduled for a registered nurse sick call in response to his request for
6    his missing prescribed medications.  (*See* CSD000044–45.)  Defendant Ibanez was also
7    aware Wilson was complaining of a "cough that won't go away" and CHF was a potentially
8    fatal condition if not treated properly with diuretics, beta blockers, or medications that
9    lower blood pressure.  (*See* CSD000044; Doc. 117 (Ex. 19), Ibanez Dep. 10:21–11:5,
10   11:14–17.)

11        Seven or eight days into Wilson's incarceration, Defendant Germono knew of
12   Wilson's history of CHF and HCM, that he had a left-sided heart pacer, that he was
13   prescribed multiple heart medications, that he complained of not receiving those
14   medications, that the remanding court warned jail medical staff concerning Wilson's
15   "serious medical issues," and that Wilson had a "cough that won't go away." (*See*
16   CSD000036; CSD000044–45.)  Germono was also aware Wilson was a Level One priority
17   patient who complained of shortness of breath and that his mother had called jail medical
18   staff about his having trouble breathing and not receiving his medications.  (*See*
19   CSD000036.)  During her examination of Wilson, Germono learned he was in moderate
20   distress with lung sounds as well as upper respiratory and inspiratory wheezing.  (*See*
21   CSD000035.)  While Germono knew Wilson was not using accessory muscles to breath,
22   she also knew he had a cough and would catch his breath whenever he talked.  (*See id.*)
23   Importantly, Germono knew that people with CHF can die if left untreated and
24   undiagnosed and that signs of CHF included difficulty breathing—one of Wilson's
25   symptoms.  (*See* Doc. 100-2 (Ex. F) Germono Dep. 30:5–13.; Doc. 117-2 (Ex. 13)
26   Germono Dep. 35:10–12.)

27        To summarize, in addition to knowing of Wilson's severe cardiac issues and many
28   missed days or doses of his prescription cardiac medications, the Nurse Defendants were

aware of other facts indicating a substantial risk of harm to Wilson.  While Defendant Kumar was not aware of physical symptoms, he knew the remanding court had specifically warned jail medical staff that Wilson had serious medical issues.  Defendant Ibanez not only knew of the remanding court's warning, but also knew Wilson had a "cough that won't go away"—a "cardinal symptom" of CHF—and that CHF was deadly if not treated properly with diuretics, beta blockers, and blood pressure medications.  (*See* CSD000044; Doc. 96-2 (Ex. R), Dr. Homer Venters' Expert Report ("Venters Report") at 15.) Defendant Germono was not only aware of the remanding court's warning, but also knew of Wilson's cough, shortness of breath, trouble breathing, lung sounds, upper and inspiratory wheezing, and that he would catch his breath whenever he talks, even if he was not using accessory muscles to breath.  Notably, Defendant Germono knew difficult breathing is a sign of CHF and, if left untreated, CHF can be fatal.

It is under these circumstances that the Court must evaluate whether it was clearly established that the Nurse Defendants' inaction concerning Wilson's prescribed cardiac medications was a constitutional violation.  The Court will now discuss the controlling authority and the robust consensus of persuasive authority clearly establishing Wilson's constitutional right to not be denied or delayed his prescribed cardiac medications for his serious cardiac issues.

### i.  Ninth Circuit Precedent

In the Ninth Circuit, it is clearly established that prison officials may not "deny, delay, or intentionally interfere with medical treatment[.]"  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc) (citation omitted).  In *Wakefield v. Thompson*, the plaintiff suffered from Organic Delusional Disorder and took psychotropic medication to manage his disorder and prevent violent outbursts.  177 F.3d 1160, 1161–62 (9th Cir. 1999).  While incarcerated, the plaintiff was prescribed such medication by a prison physician.  *Id.* at 1162.  Shortly before his release, the plaintiff met with that physician, who wrote him a two-week prescription for that medication to be filled by prison officials

and dispensed to him during his release procedure. *Id.* On the day of his release, the plaintiff asked for his prescribed medication, and the officer handling his release procedure told him there was no medication available. *Id.* The plaintiff responded that the medicine was prescribed and without it he would suffer a relapse of his mental disorder, but the officer refused to even call prison medical staff to check on his prescription because the officer was "late paroling." *Id.* Eleven days after his release, the plaintiff suffered a relapse, leading to a violent outburst and his subsequent arrest. *Id.*

The Ninth Circuit explained "the state must provide prisoners with the medical care they need during the period of their incarceration" because "while a prisoner is actually incarcerated the state restricts completely his ability to secure medical care 'on his own behalf.'" *Id.* at 1164. The Ninth Circuit held that:

> the state must provide an outgoing prisoner who is receiving and continues to require medication with a supply sufficient to ensure that he has that medication available during the period of time reasonably necessary to permit him to consult a doctor and obtain a new supply. A state's failure to provide medication sufficient to cover this transitional period amounts to an abdication of its responsibility to provide medical care to those, who by reason of incarceration, are unable to provide for their own medical needs.

*Id.* Then, in addressing the officer's deliberate indifference to the plaintiff's serious medical needs, the Ninth Circuit explained "allegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference." *Id.* at 1165. The Ninth Circuit held the officer's failure to provide the plaintiff his prescribed psychotropic medication, failure to contact prison medical staff to inquire into the location of that medication, failure to make any other effort on the plaintiff's behalf, and explanation of being too busy paroling prisoners to assist the plaintiff, alleged sufficient facts to support the plaintiff's deliberate indifference to serious medical needs claim. *See id.*

The Ninth Circuit's deliberate indifference ruling in *Wakefield* did not turn on the officer's knowledge of any symptoms or pain of the plaintiff. Rather, the constitutional

violation derived from the officer denying the plaintiff medication that a prison physician had prescribed to the plaintiff for his mental health condition and making no effort to locate that medication on his behalf.  Like *Wakefield*, here a prison physician prescribed Wilson his four cardiac medications for his severe cardiac issues.  The Nurse Defendants were aware of Wilson's condition and his prescribed medications.  The Nurse Defendants were also aware Wilson complained of not receiving those prescribed medications.  Defendant Germono was additionally aware Wilson's mother had complained of Wilson's not receiving his medications.  By failing to provide Wilson those prescribed medications or make any effort on Wilson's behalf to procure those medications, the Nurse Defendants either denied or delayed Wilson's receiving those prescribed medications.

While the officer's denial of the prescribed medication in *Wakefield* appeared at least in part to be due to the non-medical reason of late paroling, the Defendants in this case have never articulated a *medical reason* why Wilson was denied or delayed his prescribed cardiac medications.  And while *Wakefield* involved an officer's denial of prescribed medication to an inmate-patient during his release from incarceration as opposed to during his incarceration, *Wakefield* is clear that the same principle governs.  In fact, the core question in *Wakefield* concerned whether the principle governing medical care for incarcerated prisoners *extends* to outgoing prisoners.  And for qualified immunity purposes, there need not be "a case directly on point," rather "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 at 741.  *Wakefield* placed the constitutional question concerning a prison official's denial of medication prescribed by a prison physician to manage a serious medical condition beyond debate.

In *Lolli v. County of Orange*, the plaintiff informed a nurse at the jail that he was diabetic, felt ill, and needed to eat something as soon as possible; the nurse assured him he would receive food promptly.  351 F.3d 410, 412 (9th Cir. 2003).  The plaintiff was placed in a holding cell where he informed deputies standing near him that he was diabetic, feeling very sick, promised long overdue food, and asked what happened to the food he requested.  *Id.* at 420.  Upon transportation to a medical observation cell, the plaintiff again told

deputies he was diabetic and needed food.  *Id.*[5]  The Ninth Circuit concluded the deputies' indifference to the plaintiff's extreme behavior, obviously sickly appearance, and urgent statements he needed food because he was diabetic could lead a jury to believe they were deliberately indifferent to a serious risk to his health in denying medical attention.  *See id.* at 421.

*Lolli* did not rest on the deputies' knowledge of any significant pain of the plaintiff. The deputies in *Lolli* were aware of the plaintiff's serious medical condition, diabetes, and his request for food to manage that condition, but they did not provide any food.  Similarly, here the Nurse Defendants were aware of Wilson's serious cardiac issues and that he was requesting his prescribed cardiac medications meant to manage his conditions.  They also knew the remanding court warned jail medical staff of Wilson's serious medical issues. Yet the Nurse Defendants failed to provide those medications.  The deputies in *Lolli* were also aware of the plaintiff's erratic behavior and sickly appearance.  Similarly here, Defendants Ibanez and Germono, both trained medical professionals, were aware of Wilson's symptoms potentially indicative of CHF and the fatal consequences of failing to treat CHF, even if those symptoms were not as pronounced as those seen by deputies in *Lolli*.  Thus, *Lolli* placed Defendants Ibanez and Germono on notice that, if they are aware of an inmate-patient's serious medical condition, symptoms consistent with that condition, and the inmate-patient's request for treatment to manage that condition, it is deliberate indifference to deny or delay such treatment.

In *Jett*, the plaintiff fractured his thumb in prison, was sent to the hospital, and advised by a physician verbally and in aftercare instructions to see an orthopedic physician. 439 F.3d at 1094.  The aftercare instructions were in the plaintiff's medical file, and the plaintiff sent medical slips, a medical grievance, and a letter to a prison physician

---

[5] There are also allegations that the plaintiff was beaten by deputies prior to his transportation to the medical observation cell that were the subject of a separate excessive force claim.  *See id.* at 415–18.

describing his need to see an orthopedic physician to set and recast his fractured right thumb. *Id.* at 1097. The Ninth Circuit determined the factfinder could find the prison physician was aware of those documents that were sent weeks earlier. *See id.* The Ninth Circuit held the factfinder could also conclude the prison physician's failure to see the plaintiff during that intervening period and ensure his fracture was set and recast was deliberate indifference to his serious medical condition. *See id.*[6]

The Ninth Circuit's opinion in *Jett* did not rest on the prison physician's knowledge of any significant pain of the plaintiff. Rather, the prison physician in *Jett* was aware of the prisoner's serious medical condition, a fractured thumb, and aware of his request for prescribed treatment, to see an orthopedist to set and recast his thumb. Despite this, the physician delayed seeing the plaintiff for weeks. As in *Jett*, the Nurse Defendants here were aware of Wilson's serious cardiac issues and his complaining of not receiving his treatment prescribed by the prison physician, i.e., his cardiac medications. Similar to *Jett*, not only did Defendants Kumar and Ibanez delay meeting with Wilson, they failed to meet with him entirely even though jail policy required them to do so. (*See* Doc. 117-5 (Ex. 16) at 1–2.) Thus, *Jett* placed Defendants Kumar and Ibanez on notice that, if they are aware of an inmate-patient's serious medical condition and his request for treatment prescribed by a physician, delaying that treatment by failing to meet with the inmate-patient and address the need for treatment constitutes deliberate indifference.

### ii. Robust Consensus of Persuasive Authority

In addition to controlling authority, a robust consensus of persuasive authority clearly established Wilson's right not to be denied or delayed medical treatment in the form of prescribed medications for a serious medical condition. This includes in situations where the plaintiff's symptoms or significant pain had not yet onset.

---

[6] The Ninth Circuit also found genuine disputes of fact concerning deliberate indifference to serious medical needs on other grounds for the physician's conduct after meeting with the plaintiff. *See id.* at 1097–98.

18

In *Johnson v. Schwarzenegger*, in a memorandum opinion, the Ninth Circuit reversed the district court's granting of summary judgment to a chief medical officer and licensed pharmacist. 366 F. App'x 767, 769 (9th Cir. 2010). The plaintiff in *Johnson* was diagnosed with hepatitis C, cirrhosis, and end-stage liver disease and was prescribed Lactulose for his conditions. *Johnson v. Swartzenegger*, No. S-06-0821 MCE EFB P, 2008 WL 449708, at *1 (E.D. Cal. Feb. 15, 2008), *report and recommendation adopted*, No. CIV S-06-0821MCE EFB P, 2008 WL 877835 (E.D. Cal. Mar. 28, 2008), *aff'd in part, rev'd in part sub nom. Johnson*, 366 F. App'x 767. The Ninth Circuit explained there was conflicting evidence on the issue of whether there was an interruption in plaintiff's Lactulose refills because he had complained he was deprived of his medication for three days and pursued inmate appeals concerning ongoing failures to provide him his prescribed dosage of medication. 366 F. App'x 769. The Ninth Circuit reversed summary judgment to the chief medical officer because he was responsible for ensuring the plaintiff continued to receive necessary prescribed medications when he was transferred from a previous facility, received correspondence from plaintiff's sister concerning his not receiving his prescribed medication regularly, and saw plaintiff's appeal containing his complaint of not receiving medication for at least three days. *Id.*[7] The Ninth Circuit also found there was a genuine dispute of fact as to whether the plaintiff's irregular medication supply was the cause of his *subsequent* suffering and coma. *Id.*

The Ninth Circuit in *Johnson* held that "[f]ailure to provide medication to prevent a life-threatening condition may amount to deliberate indifference to a serious medical need." *Id.* (citing *Gibson*, 290 F.3d at 1194; *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000); *Wakefield*, 177 F.3d at 1164–65). The Ninth Circuit's opinion did not mention or rely on whether the plaintiff was experiencing symptoms or in pain during the three-day period that he did not receive his prescribed medication and whether the defendants were

---

[7] The Ninth Circuit also reversed summary judgment for the licensed pharmacist given plaintiff's allegations of interruption to his medication supply. *Id.* at 770.

so aware of any symptoms or pain.

In *Natale v. Camden County Correctional Facility*, the plaintiff, an insulin-dependent diabetic, was arrested and taken to an emergency department, where a physician gave him a dose of insulin and wrote a note stating he "must have insulin" while incarcerated.  318 F.3d 575, 578 (3d Cir. 2003).  During his subsequent intake screening at the jail, the plaintiff informed employees of the private company providing health services for the jail that he was an insulin-dependent diabetic.  *Id.*  That information was also noted in his chart.  *Id.*  The plaintiff did not receive his first dose of insulin until 21 hours after being admitted to the jail.  *Id.*  The plaintiff was released the same day and suffered a stroke two days later.  *Id.*  The Third Circuit reversed the district court's decision granting summary judgment on the plaintiff's deliberate indifference claim and determined there was sufficient evidence in the record the employees were deliberately indifferent to the plaintiff's serious medical needs.  *Id.* at 582.  The Third Circuit reasoned there was evidence prison officials ignored the plaintiff's need for insulin, including testimony from the plaintiff he informed employees he was an insulin-dependent diabetic, the note on his chart, and that a physician indicated in a note he "must have insulin."  *Id.*  The Third Circuit held "[a] reasonable jury could conclude that [the] employees knew that Natale was an insulin-dependent diabetic and that if insulin was not administered as required, he would suffer adverse health consequences."  *Id.* at 582–83.  The Third Circuit also held "[a] reasonable jury could find that such a practice constituted the delay of medical treatment for non-medical reasons" because of evidence the employees delayed medical treatment due to the lack of a policy requiring promptly seeing inmate-patients with more immediate medical needs.  *See id.* at 583.

Absent from the Third Circuit's opinion in *Natale* was any mention of the medical employees' awareness of any physical symptoms or significant pain of the plaintiff.  Rather, the Third Circuit's opinion rested on their awareness of the plaintiff's serious medical condition and need for medication for that condition.  While the medical employees' delay in providing medication in *Natale* appeared to be due in part to a non-

medical reason, the Defendants in this case, again, have never articulated a *medical reason* why Wilson was delayed many days in receiving his prescribed cardiac medications.

In *Scinto v. Stansberry*, a prison physician prescribed twice a day insulin to a diabetic plaintiff when his blood sugar rose above 140 milligrams per deciliter and prescribed supplemental insulin injections when the plaintiff's blood sugar rose above 150 milligrams per deciliter.   841 F.3d 219, 227 (4th Cir. 2016).   The plaintiff requested the physician provide a supplemental insulin injection when his blood sugar was at 200 milligrams per deciliter.   *Id.*   Instead of providing the insulin, the physician terminated the medical visit with the plaintiff.   *Id.*   The physician instead developed an alternative treatment plan to monitor his blood sugar levels at mealtimes and provide short acting insulin, but the plaintiff claimed that plan was not followed.   *Id.* at 227–28.   The plaintiff claimed this inadequate treatment increased his blood sugar and hemoglobin A1C levels and unnecessarily exacerbated his serious diabetic condition, damaging his kidneys, eyesight, nervous system, and psychological well-being.   *Id.* at 228.   The Fourth Circuit held there was a genuine dispute of material fact concerning the physician's deliberate indifference to the plaintiff's serious medical needs.   *Id.* at 229.   The Fourth Circuit reasoned the physician was aware of the plaintiff's serious medical condition due to his prescribing the insulin regimen for his diabetes and was aware of the plaintiff's elevated blood sugar level at the time, raising an inference that the physician knew failure to provide the insulin could result in a substantial risk of serious harm.   *Id.*   The Fourth Circuit's opinion in *Scinto* did not rest on the physician's knowledge of any symptoms or significant pain of the plaintiff, but rather on his awareness of his diabetes, elevated blood sugar level, his prescribed insulin regime, and the physician's denial of his insulin.

In *Easter v. Powell*, the plaintiff had a history of serious heart problems and went to the prison infirmary complaining of severe chest pain.   467 F.3d 459, 461 (5th Cir. 2006).   The nurse took his blood pressure and sent him to the prison pharmacy to have his

21

nitroglycerin[8] prescription refilled.  *Id.*  The pharmacy was closed, and when plaintiff asked the nurse for nitroglycerin, she ordered him to leave and denied his requests for an electrocardiogram and nitroglycerin.   *Id.* After four hours of severe pain, a different medical professional provided the plaintiff nitroglycerin, but by the time his pain ceased, the blood vessels in his left eye had burst and filled with blood.  *Id.*  Accepting the plaintiff's allegations as true, the Fifth Circuit presumed the nurse knew the plaintiff had a heart condition including heart disease, had previously suffered a heart attack, was experiencing severe chest pains, and did not have his prescribed heart medication.  *Id.* at 463.  The Fifth Circuit inferred from such circumstances that the nurse was subjectively aware of a substantial risk of harm to the plaintiff's health.  *Id.*  The Fifth Circuit also determined the plaintiff sufficiently alleged the nurse failed to act by simply directing him to the pharmacy to obtain a refill of his nitroglycerin prescription, and upon learning the pharmacy was closed, sending him back to his cell without providing any treatment.  *Id.* at 463–64.  The Fifth Circuit's opinion in *Easter* is similar to this case in that the nurse knew about the plaintiff's severe cardiac issues, that he was prescribed heart medication, and that he did not have that medication and was requesting that medication.  While the nurse in *Easter* also knew the plaintiff was experiencing severe chest pain, that is similar to Defendant Ibanez's knowledge that Wilson had a cough that would not go away and Defendant Germono's knowledge of a multitude of other symptoms Wilson had that were potentially indicative of CHF.

In *Garretson v. City of Madison Heights*, the plaintiff informed her booking officer of her diabetic condition and that she was late for her current dose of insulin.  407 F.3d

---

[8] Nitroglycerin is used to prevent chest pain caused by coronary artery disease or to relieve a chest pain attack that is already occurring.  *See* Mayo Clinic, Nitroglycerin (Oral Route, Sublingual Route), www.mayoclinic.org, *available at* https://www.mayoclinic.org/drugs-supplements/nitroglycerin-oral-route-sublingual-route/description/drg 20072863#:~:text= Nitroglycerin%20belongs%20to%20the%20group,while%20reducing%20its%20work%2 0load (last visited March 15, 2024).

789, 794 (6th Cir. 2005). The booking officer explained insulin would not be supplied, but the plaintiff could make arrangements for insulin to be delivered, and the jail would administer it upon delivery. *Id.* The plaintiff requested a transfer to another jail she knew would provide insulin, but her request was denied, and no arrangements were made to acquire and administer insulin to her. *Id.* The plaintiff was placed in a holding cell where she informed another officer of her medical needs, and the officer said he would "see what he can do." *Id.* Throughout the night, the plaintiff suffered symptoms of insulin deprivation and high blood pressure and knocked on the cell door for assistance but received no response. *Id.* The Sixth Circuit concluded these two officers were aware of facts from which they could infer a substantial risk of harm and there was a genuine dispute of material fact as to whether they were deliberately indifferent to the plaintiff's serious medical needs. *Id.* at 798. The Sixth Circuit's opinion in *Garretson* did not concern the officers' knowledge of the plaintiff's symptoms or significant pain, but rather only upon their knowing she had a serious medical condition requiring medication, her requests for that medication, and their failure to provide her that medication.

In *Hudson v. McHugh*, during the plaintiff's intake interview at the jail, he told several officers he was epileptic and needed anti-convulsion medication daily. 148 F.3d 859, 861 (7th Cir. 1998). The intake officers did not acquire the plaintiff's anti-convulsion medication. *Id.* Over the next few days, he requested that medication and filled out several medical request forms, but again did not receive the medication. *Id.* After a few more days, the plaintiff saw a nurse, who he informed about his condition, but the nurse did not take any steps to get him his anti-convulsion medication. *Id.* After 11 days of having his requests ignored, the plaintiff suffered a grand mal epileptic seizure. *Id.* In concluding the plaintiff had adequately pled a deliberate indifference claim against the jail intake officers and nurse, the Seventh Circuit reasoned "the officers at the jail knew the basic facts giving rise to the inference that he had a serious medical need—they knew he had epilepsy, they knew he didn't have his medicine and they knew he wasn't getting it—and with knowledge of these basic facts pleaded, drawing the inference of a serious medical need is a question

23

of fact." *Id.* at 864 (citing *Farmer*, 114 S.Ct. at 1981–82).  The Seventh Circuit explained the case was a "*prototypical* case of deliberate indifference, an inmate with a potentially serious problem repeatedly requesting medical aid, receiving none, and then suffering a serious injury." *Id.* (emphasis added).  The Seventh Circuit's opinion in *Hudson* did not reference any symptoms or significant pain of the plaintiff.  Rather, it was sufficient that the defendants knew of his serious medical condition, his complaints of not receiving his necessary medication, and their failure to provide that medication.

In *Wynn v. Southward*, the plaintiff was moved to an isolation detention unit without his heart medication.  251 F.3d 588, 590–91 (7th Cir. 2001).  The plaintiff filed a grievance form requesting, *inter alia*, his heart medication immediately.  *Id.* at 591.  The plaintiff then continued to request his medication from officers for a week but to no avail.  *Id.*  The plaintiff's heart began fluttering and he warned that he may begin to experience "heavy chest pains" if he did not resume his medication.  *Id.*  The Seventh Circuit held the plaintiff adequately stated a deliberate indifference claim against officers regarding their failure to provide his heart medication.  *See id.* at 594.  In *Wynn*, it does not appear the officers were aware of whether the plaintiff had an underlying heart condition, but rather that the plaintiff was without his heart medication, experiencing heart fluttering, and could experience heavy chest pains.  By contrast here, the Nurse Defendants, trained medical professionals, were aware of Wilson's serious cardiac issues, the remanding court's warning about his serious medical issues, and that he did not have his prescribed cardiac medications.  Like the officers in *Wynn*, Defendants Ibanez and Germono were aware of Wilson's symptoms, but they additionally knew of symptoms consistent with Wilson's history of CHF and that CHF is potentially fatal when left untreated.

In *Egebergh v. Nicholson*, the plaintiff informed the booking officer that he was an insulin-dependent diabetic and the booking officer noted this on his lock-up sheet.  272 F.3d 925, 927 (7th Cir. 2001).  The plaintiff's sister brought insulin to the police station, he received an insulin injection that evening, and the shift supervisor's logbook said he would need another shot in the morning.  *Id.*  In the morning, the shift supervisor read that

logbook and assigned another office to take the plaintiff to a bond hearing.  *Id.*  The shift supervisor knew an insulin-dependent diabetic needs regular insulin injections and the assigned officer knew diabetes is potentially fatal.  *Id.*  The plaintiff informed the officer he needed another insulin shot, which was relayed to the shift supervisor, who said plaintiff did not need the shot.  *Id.*  The plaintiff did not receive the shot and was taken to the courthouse for the bond hearing where plaintiff complained of feeling woozy and shaky, but the officer did nothing.  *Id.*  The plaintiff freaked out in an adjacent room, but then feeling better, the bond hearing proceeded, and bond was denied.  *Id.*  Upon arriving at jail, the plaintiff was examined by a doctor that afternoon who noticed he was dehydrated.  *Id.*  His condition deteriorated rapidly, and the plaintiff died that evening.  *Id.*  The Seventh Circuit held that a reasonable jury could infer the shift supervisor and officer were deliberately indifferent to the plaintiff's serious medical needs because they knew he was an insulin-dependent diabetic, could be seriously harmed by the deprivation of insulin, and deprived him of the morning shot for no other reason than to get him out of the police station.  *Id.* at 927–28.  The Seventh Circuit's opinion in *Egebergh* did not rely on the defendants' knowledge of any symptoms or significant pain when they failed to provide the plaintiff his insulin.  Notably, like the officers in *Egebergh*, Defendants Ibanez and Germono, each knew CHF was potentially fatal, that Wilson was not receiving his prescribed cardiac medications, and failed to provide those medications.

In *Phillips v. Jasper County Jail*, the Eighth Circuit denied summary judgment to jail employees on a deliberate indifference claim for failing to administer the plaintiff his prescribed dosage of anti-seizure medication.  437 F.3d 791, 795–96 (8th Cir. 2006).  The Eight Circuit first explained that the knowing failure to administer prescribed medicine can constitute deliberate indifference.  *Id.* at 796.  The Eighth Circuit then held there was a genuine dispute of material fact as to whether the jail employees were deliberately indifferent where there was evidence that both before and after the plaintiff suffered a seizure, he was not given the prescribed amount of his anti-seizure medication and filed grievances regarding that failure to no effect.  *Id.*  The jail employees contested whether

the plaintiff suffered a seizure, and the Eighth Circuit found a genuine dispute of material fact on that issue as well.  *Id.*  The Eighth Circuit's opinion in *Phillips* made no reference to the jail employees' knowledge of any symptoms or significant pain of the plaintiff before his seizure.  Rather, it was sufficient that jail employees did not give him the prescribed amount of his anti-seizure medication, even though he received some anti-seizure medication, after he complained of that failure.

### iii.  Analysis

Viewing the evidence in the light most favorable to Plaintiff, the Nurse Defendants knew Wilson had a history of CHF and HCM, had a heart pacer, that the remanding court warned jail medical staff of his serious medical issues, that he was prescribed four cardiac medications by a prison physician to manage his serious cardiac issues, that he complained of not receiving those medications, and that he did not receive those medications for many days or doses.  Additionally, Defendant Ibanez knew Wilson complained of a "cough that won't go away"—a "cardinal symptom" of CHF—and that CHF was deadly if not treated properly with diuretics, beta blockers, and blood pressure medications.  Defendant Germono knew Wilson's mother called jail medical staff complaining of his trouble breathing and not receiving his medications.  She also knew of Wilson's cough, shortness of breath, trouble breathing, lung sounds, upper and inspiratory wheezing, and that he would catch his breath whenever he talks, even if he was not using accessory muscles to breath.  Defendant Germono knew difficult breathing is a sign of CHF and, if left untreated, CHF can be fatal.  Despite this knowledge, the Nurse Defendants failed to ensure Wilson received his prescribed cardiac medications.

At the time of the Nurse Defendants' conduct, it was clearly established that denying or delaying providing prescribed cardiac medications to an inmate-patient jail medical staff knew had severe cardiac issues and had missed many days or doses of those medications was a constitutional violation.  Controlling authority in *Wakefield* placed the Nurse Defendants on notice that, if they are aware a prison physician prescribed an inmate-patient medication to manage a serious medical condition, it is deliberate indifference to deny the

inmate-patient's request for that medication for non-medical reasons.  That is true even if the inmate-patient is not expressing any symptoms or experiencing significant pain, as was the situation in *Wakefield*.  Additionally, controlling authority in *Jett* placed Defendants Kumar and Ibanez on notice that, if they are aware of an inmate-patient's serious medical condition and his request for treatment prescribed by a physician, delaying that treatment by failing to meet with the inmate-patient and address the need for treatment constitutes deliberate indifference.  Consistent with *Jett* and *Wakefield*, the opinions in *Johnson*, *Natale*, *Garretson*, *Hudson*, *Egebergh*, and *Phillips* placed the Nurse Defendants on notice that if they are aware of an inmate-patient's serious medical condition, the need for treatment to manage that condition, and the inmate-patient's request for that treatment, it is deliberate indifference to deny or delay that treatment.

Moreover, controlling authority in *Lolli* placed Defendants Ibanez and Germono on notice that, if they are aware of an inmate-patient's serious medical condition, symptoms consistent with that condition, and the inmate-patient's request for treatment to manage that condition, it is deliberate indifference to deny or delay such treatment.  Consistent with *Lolli*, the opinions in *Scinton*, *Easter*, and *Wynn* placed Defendants Ibanez and Germono on notice that such denial or delay of treatment include the denial or delay in providing prescribed medication for an inmate-patient's serious medical condition when they exhibit symptoms consistent with that condition.

Thus, it was clearly established by controlling authority in this Circuit and a robust consensus of persuasive authority at the time of the Nurse Defendants' conduct in this case that jail medical staff could not deny or delay providing prescribed cardiac medications to an inmate-patient they knew had serious cardiac issues and had not received his prescribed cardiac medications for many days or doses.  As demonstrated in *Wakefield*, *Jett*, *Johnson*, *Natale*, *Garretson*, *Hudson*, *Egebergh*, and *Phillips*, the Nurse Defendants' argument that they needed to know Wilson was in significant pain for their inaction to constitute deliberate indifference "run[s] afoul of clearly established law."  *Henderson*, 2021 WL 3185479, at *3.  Thus, the Court **GRANTS** Plaintiff's Frivolity Motion and certifies that

the Nurse Defendants' interlocutory appeals are frivolous.  In light of the foregoing, the Court **DENIES** Defendants' Stay Motion.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Frivolity Motion (Doc. 154) and **DENIES** Defendants' Stay Motion (Doc. 148).  The Court resets the remaining pretrial deadlines as follows:

1. Pretrial Disclosures are due **on or before May 31, 2024**

2. Memorandum of Contentions of Fact and Law are due **on or before May 31, 2024**

3. Meeting with counsel Pursuant to CivLR 16.1(f)(4) must occur **on or before June 7, 2024**

4. Plaintiff's Draft Pretrial Order is due **on or before June 14, 2024**

5. The parties' Proposed Final Pretrial Conference Order must be lodged with the Court **on or before June 21, 2024**

6. The pretrial conference is scheduled for **June 27, 2024 at 1:30 p.m.**

   **IT IS SO ORDERED.**

DATE:  April 8, 2024

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE